IN THE DISTRICT COURT OF THE VIRGIN ISLANDS

DIVISION OF ST. CROIX

PORT HAMILTON REFINING AND TRANSPORTATION, LLLP,

PLAINTIFF,

V.

LIMETREE BAY TERMINALS, LLC, D/B/A OCEAN POINT TERMINALS AND ALL OTHERS CLAIMING AN INTEREST IN ANY IMPROVEMENTS LOCATED ON ANY OF THE FOLLOWING PROPERTIES:

REFINERY PLOT 1-AB, (COMPRISING 6.8818 U.S. ACRES) AND REMAINDER OF REFINERY PLOT NO. 1 (COMPRISING 114.9456 U.S. ACRES), OVER PORTIONS OF ESTATES BLESSING AND HOPE, KING AND QUEEN QUARTERS, ST. CROIX, U.S. VIRGIN ISLANDS AS SHOWN ON OLG DRAWING NO. A9-L 40-C0 19, DATED MAY 24, 2019;

REMAINDER OF REFINERY PLOT NO. 2 (COMPRISING 26.5670 U.S. ACRES), OVER PORTIONS OF ESTATES BLESSING, HOPE AND JERUSALEM, KING AND QUEEN QUARTERS, ST. CROIX, U.S. VIRGIN ISLANDS AS SHOWN ON OLG DRAWING NO. A9-142-C019, DATED MAY 30, 2019; AND

REMAINDER OF REFINERY PLOT NO. 3 (COMPRISING 184.4305 U.S. ACRES), OVER PORTIONS OF ESTATES JERUSALEM, FIGTREE HILL AND CASTLE COAKLEY LAND, QUEEN QUARTER, ST. CROIX, U.S. VIRGIN ISLANDS AS SHOWN ON OLG DRAWING NO. A9-141-C019, DATED MAY 24, 2019.

DEFENDANTS.

CASE NO. 1:24-CV-00004

MEMORANDUM IN SUPPORT OF MOTION TO REMAND

Port Hamilton Refining and Transportation, LLLP ("Port Hamilton") moves to remand this matter to the Superior Court of the Virgin Islands for the following reasons:

1. Ocean Point's removal of the action was untimely such that this Court lacks jurisdiction;
2. The Court lacks post-confirmation jurisdiction over the dispute;
2. The Court is required to abstain from the case;
3. Even if abstention is not mandatory, as a matter of sound exercise of the Court's discretion, it should abstain from the matter.

## BACKGROUND

Port Hamilton's amended complaint filed in the Superior Court seeks to quiet title not just between it and Limetree Bay Terminals, LLC, d/b/a Ocean Point Terminals ("Ocean Point") but also between any other parties who may claim an interest in the properties that are the subject of the quiet title action. The title issues in the case date to 2016, when Ocean Point purchased the refinery and terminal facility formally and colloquially known as "Hovensa," or "HOVIC" or "Hess." Ocean Point purchased the assets out of a bankruptcy proceeding initiated by Hovensa in this Court.

As alleged in the First Amended Complaint ("FAC") (Doc. No. 1-1 at ECF p.33), as part of that 2016 purchase, Ocean Point structured the deal so that it would take title from the Hovensa trustee to "Above-Grade Refinery Assets" ("AGRA") (essentially defined as any structure on refinery property that is exclusively above-grade) but not

the underlying land.[1] *See* FAC, ¶¶26–29. Simultaneously, Hovensa executed a deed transferring the land upon which the refinery was situated (with its associated legacy pollution liabilities) to the Hovensa Environmental Response Trust ("HERT"). The FAC identifies three fundamental problems with the attempted transfer of the AGRA: First, Ocean Point attempted to convey title over the AGRA from Hovensa to Ocean Point using a bill of sale that was neither witnessed nor notarized; but, the AGRA consists of real property—improvements to land—such that any attempt to convey it must comply with the formality requirements of Virgin Islands law relating to transfers of real estate. Specifically, the document seeking to accomplish such a transfer must be witnessed by two witnesses whose signatures are notarized by a notary public. *See generally* FAC, ¶¶27–29, 66–72.[2] Second, the property being conveyed was inadequately identified in the bill of sale such that it is impossible to determine exactly what was being conveyed. FAC, ¶¶53–60. Third, this attempted transfer was an attempt to create a horizontal property regime (bifurcate the land from the structures) similar to the way condominium complexes are created. However, Virgin Islands common law does not recognize horizontal property regimes and the only authorized horizontal regime in the Virgin Islands is one that is created in accordance with the Virgin Islands Condominium Act, 28 V.I.C. §§ 901,*et seq*. Assuming it is even possible to "condo-ize a refinery," Ocean Point failed to follow the requirements of the Virgin Islands Condominium Act and thus its attempt to bifurcate the AGRA from "the fee"

[1] The full definition is quoted in paragraph 53 of the FAC.

[2] The Hovensa-Ocean Point bill of sale is found starting at ECF page 121 of Doc. No. 1-2 filed in this action.

[the land] failed. *See* FAC, ¶¶74-85.

All of the above-described failures of title occurred *five years before LBR entered bankruptcy*. None of the above-described failures of title were resolved or adjudicated in the LBR bankruptcy. This failure of title means that either Hovensa continues to own the AGRA or they were transferred to the HERT when Hovensa quitclaimed the land underneath the AGRA to LBR (and then transferred to Port Hamilton when LBR quitclaimed the same property to Port Hamilton).

In 2018, Ocean Point (which owned both the refinery and the terminal at the time), created an affiliated company, LBR, to own and run the refinery. Ocean Point and LBR thereafter entered into a "Shared Services Systems Agreement" ("SSSA") whereby they contemplated that Ocean Point would imitate the process it followed in obtaining [or at least attempting to obtain] title to the AGRA; but Ocean Point wanted to retain control over the refinery assets and thus, rather than transferring 100% ownership of the AGRA, Ocean Point attempted to transfer to LBR an undivided percentage interest in various portions of the AGRA.[3] *See* Exhibit 1, SSSA. The operative language in the SSSA is found in Section 2.3(b) of Exhibit 1, which states that the interests listed in Exhibit D of the SSSA will be transferred via a bill of sale.

By copying the process used in the prior transaction with Hovensa, Ocean Point also copied the mistakes in that process. Specifically, in addition to inadequately describing the property being conveyed via the bill of sale and attempting to adopt a horizontal

[3] Exhibit D to the SSSA is a chart showing the percentage interests that Ocean Point *intended* to convey via a bill of sale.

property regime not recognized under Virgin Islands law, Ocean Point used a bill of sale to attempt to convey a portion of the AGRA to LBR but again failed to have the bill of sale witnessed and notarized. *See* Exhibit 2, bill of sale from LBT to LBR. Of course, as described above, there was one additional fatal flaw—because of the failure of the Hovensa-Ocean Point bill of sale, Ocean Point did not own the AGRA and could not transfer them to Ocean Point.

In July 2021, LBR filed for bankruptcy in the Southern District of Texas. Neither Ocean Point nor Port Hamilton were debtors in the LBR bankruptcy proceeding. LBR's assets were purchased by Port Hamilton as the successful bidder in a bankruptcy 363 sale.[4] The Sale Order entered by the LBR bankruptcy court contained several key provisions:

First, Finding of Fact V of the bankruptcy court's sale order (Doc. No. 1-1 at ECF p.113) ("Sale Order" [Exhibit D to the First Amended Complaint]) recognized that Port Hamilton:

> would not have entered into the APA and would not have consummated the Sale, thus adversely affecting the Debtors, their estates, and their creditors, if the Sale was not free and clear of all Liens, Claims, and *Interests* (each as defined herein) of any kind or nature whatsoever.

(Emphasis added.)

Second, Finding of Fact W of the bankruptcy court's sale order (Doc. No. 1-1 at ECF pp. 113–14) confirmed that the purchaser (Port Hamilton) took all of LBR's assets "free and clear of all Liens, Claims and Interests." The Sale Order specifies that "Liens,

[4] So named for the statute that authorizes the sale: 11 U.S.C. § 363.

Claims, and Interests" "includes, but [is] not limited to . . . encumbrances . . . restrictions on transferability or other similar restrictions . . . right[s] of use or possession . . . interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently exercisable), . . . whether imposed by agreement, understanding, law, equity or otherwise, . . ."

Third, Section V of the Sale Order (Doc. No. 1-1 at ECF p.121) made that order binding upon all creditors of, and *equity holders* in, the Debtors *and any and all other parties in interest*, including, without limitation, *any and all holders of* Liens, Claims, or *Interests*." (Emphasis added.) Ocean Point claims it had an equity interest in the AGRA and thus the Sale Order is binding upon it.

Fourth, Section VII of the Sale Order (Doc. No. 1-1 at ECF p.123) then orders that,

> 9. Except as expressly permitted or otherwise specifically provided for in the APA or this Sale Order, pursuant to sections 105(a), 363(b), 363(f), and 365(b) of the Bankruptcy Code, upon the Closing, the Purchased Assets *shall be transferred to the Purchaser free and clear of any and all* Liens, Claims, and *Interests* of any kind or nature whatsoever, excluding the Operating Agreement Assumed Liabilities.

(Emphasis added.)

Finally, the same section of the Sale Order defines "Liens," "Claims," and "Interests" as:

> a. any and all charges, liens (statutory or otherwise), claims, mortgages, leases, subleases, hypothecations, deeds of trust, pledge, security interests, options, rights of use or possession, rights of first offer or first refusal (or any other type of preferential arrangement), *rights of consent*, rights

> of setoff, successor liability, easements, servitudes, *restrictive covenants, interests or rights under any operating agreement*, encroachments, encumbrances, third-party interests, *or any other restrictions or limitations of any kind with respect to the Purchased Assets* including all the restrictions or limitations set forth in Paragraph W above (collectively, "Liens");
>
> * * *
>
> c. any and all *equity or other interests of any kind or nature whatsoever in or with respect to* (x) any of the Debtors or their respective affiliates, subsidiaries, successors, or assigns or (y) *the Purchased Assets, including all the interests set forth in Paragraph W above* (collectively, "Interests"); whether in law or in equity, known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, direct or indirect, and *whether arising by agreement, understanding, law, equity or otherwise*, and whether occurring or arising before, on or after the Petition Date, or occurring or arising prior to the Closing. *Any and all such Liens, Claims, and Interests shall attach to the portion of the purchase price ultimately attributable to the Purchased Assets against or in which they claim an interest, in the order of their priority, with the same validity, force, and effect, if any, which they now have against such Purchased Assets*, subject to any claims, defenses, and objections, if any, that the Debtors or their estates may possess with respect thereto. On the Closing, the Purchaser shall take title to and possession of the Purchased Assets in PHRT, *subject only to the obligations under the APA and Transaction Documents, including Operating Agreement Assumed Liabilities.*
>
> * * *

(Emphasis added.)

As stated in footnote 5 of Ocean Point's motion to transfer (Doc. No. 2), Ocean Point believes that Paragraphs 31 and 34 of the Sale Order support its position that the Sale

Order preserved its ownership claim in the AGRA. Paragraph 31 provides:

> 31. Sale of Debtors' Interest in Assets Only. This Order authorizes, permits, and shall be deemed to authorize *and permit the Debtors to sell to the Purchaser any undivided interest of shared services systems*[5] *owned by the Debtors.* Notwithstanding anything to the contrary in this Order or the APA, *nothing in this Order authorizes, permits or shall be deemed to authorize or permit, the Debtors to sell, transfer or assign to the Purchaser or any other party any Non-Debtor Asset* (as defined in the Bidding Procedures) *including, for the avoidance of doubt, the LBT Entities' undivided interest of shared services systems, any real property owned by the LBT Entities, or the rights of the LBT Entities under any Permits.*

(Emphasis added.) Paragraph 31 offers no solace to Ocean Point. Effectively, all it says is, "LBR can sell any undivided interest of shared services systems it owns and cannot sell any undivided interest in shared services systems that Ocean Point owns." Critically—especially for purposes of the instant motion, what it did *not* do is to

[5] "Shared Services Systems" is not defined in the Sale Order. It is defined in the fourth "whereas clause" of the SSSA as being "certain personal property, fixtures, facilities, equipment and other infrastructure assets (excluding real estate) all as further described on Part I of Exhibit B (the ***'Shared Services Systems'***)." (Emphasis in the original.) *See* Exhibit 1. Part I of Exhibit B (found at PDF p.56 of Exhibit 1) lists the "Shared Services Systems" and is far more limited than the definition of AGRA. Thus, even under Ocean Point's interpretation of the Sale Order, it would, at most, only affect those assets listed in Part I of Exhibit B and would not, for example, apply to other buildings arguably defined as "AGRA" such as the powerhouse, the firehouse, any of the power substations and most other buildings to which Ocean Point claims ownership. Moreover, Ocean Point's ownership position is inconsistent. For example, under its interpretation of Paragraph 31, it would own an undivided interest in the refinery coke domes (which are listed in Part I of Exhibit B) but own no interest in the firehouse. But, in other litigation, Ocean Point expressly disclaims ownership of the coke domes while claiming to jointly own the firehouse. *See* Crossclaim filed by Ocean Point in Case. No. 1:23-cv-00012 (pending in this Court) at ¶¶6–7 (alleging joint ownership with Port Hamilton over the firehouse but alleging that Port Hamilton owns the coke domes).

determine whether Ocean Point owned any such assets. And as shown above, Ocean Point *never* acquired any interests in the AGRA due to the failure of the Hovensa-Ocean Point bill of sale.

Paragraph 34 also offers no respite to Ocean Point. It merely deals with rights of use. It provides:

> 34. Rights of *Access* Are Preserved. Notwithstanding anything to the contrary in this Order, the APA or any applicable transition services agreement, *all rights, claims, and defenses*[6] of the LBT Entities, the Debtors, and the Purchaser (if any) under or with respect to any agreements benefitting or in favor of the LBT Entities, the Debtors, or the Purchaser (if any), respectively are expressly and fully reserved and preserved, including, without limitation, *all easements and rights of use or access* to the Debtors' property and property jointly owned by the Debtors and the LBT Entities' property, including as set forth in the SSSA, and, for the avoidance of doubt, the LBT Entities and Purchaser may continue *to use and benefit from all such easements and rights of use or access after Closing* in accordance with the SSSA or any other agreements between the Debtors and the LBT Entities.

(Emphasis added.) Thus Paragraph 34 likewise does not determine whether Ocean Point owns any of the AGRA.

## ARGUMENT

This matter should be remanded to the Superior Court of the Virgin Islands for a number of reasons. First, the removal was untimely. Second, this Court lacks post-confirmation jurisdiction over this dispute between two non-debtors. Third, mandatory

[6] Note that unlike the sections of the Sale Order authorizing the sale of the refinery assets free and clear of "rights, claims and interests," this paragraph does not include "interests" and instead substitutes "defenses."

abstention applies. And fourth, even if mandatory abstention does not apply, the Court should exercise its discretion and abstain.

**1. THE NOTICE OF REMOVAL WAS UNTIMELY.**

Ocean Point removed this matter pursuant to Federal Rule of Bankruptcy Procedure 9027(a)(3). *See* Doc. No. 1, at 1. Rule 9027(a)(3) requires the notice of removal to be filed within 30 days of service of the first pleading setting forth the claim sought to be removed. The original Verified Complaint (Doc. No. 1-1) was filed December 27, 2023 and alleged that the Sale Order provided Port Hamilton with easement rights across Ocean Point's real property. *See* Doc. No. 1-1, ¶¶4, 34–36. These rights were at issue because Ocean Point was refusing to grant Port Hamilton access in accordance with those easements. Port Hamilton's initial complaint specifically invoked Paragraph 34 of the Bankruptcy Sale Order, which Ocean Point also invokes. *Compare* Complaint, ¶34 (quoting paragraph 34 of the Sale Order) with footnote 5 of the motion to transfer (Doc. No. 2) (also quoting paragraph 34). Ocean Point filed the Notice of Removal on February 15, 2024, well more than 30 days later. Thus, the removal is untimely and the Court should remand the case to the Superior Court of the Virgin Islands.

**2. THE COURT LACKS POST-CONFIRMATION JURISDICTION OVER THE CASE.**

This is a post-confirmation dispute between two non-debtor parties that will not impact the Debtors, their obligations, or distributions to their creditors. More importantly, this dispute does not arise under the Bankruptcy Code, arise in a bankruptcy case, or relate to a debtor. Bankruptcy court jurisdiction is set forth in 28

U.S.C. § 1334. Although section 1334 does not expressly limit the bankruptcy court's post-confirmation jurisdiction, most courts agree that "once confirmation occurs, the bankruptcy court's jurisdiction shrinks." *In re General Media, Inc.*, 335 B.R. 66, 73 (Bankr. S.D.N.Y. 2005); *see also Cantor v. Am. Banknote Corp.*, Case No. 06 Civ. 1392 (PAC), 2007 WL 3084966, at *3 (S.D.N.Y. Oct. 22, 2007) ("Generally a bankruptcy court's jurisdiction abates upon confirmation of the reorganization plan."); *Guccione v. Bell,* No. 06 Civ. 492 (SHS), 2006 WL 2032641, at *4 (S.D.N.Y. July 20, 2006) ("Courts generally agree that federal jurisdiction pursuant to section 1334 shrinks once plan confirmation has occurred.").

In the Third Circuit, bankruptcy jurisdiction will not extend to a dispute between non-debtors unless the dispute creates "the logical possibility that the estate will be affected." *In re Federal–Mogul Global, Inc.*, 300 F.3d 368, 380 (3d Cir.2002) (internal quotations omitted), *cert. denied*, 537 U.S. 1148 (2003). Although "the scope of bankruptcy court jurisdiction diminishes with plan confirmation, bankruptcy court jurisdiction does not disappear entirely." *In re Resorts Int'l, Inc.*, 372 F.3d 154, 165 (3d Cir. 2004).

Even if a plan of reorganization or confirmation order provides that the bankruptcy court will retain jurisdiction, such a retention provision is still subject to the requirement that the bankruptcy court have jurisdiction. As the Third Circuit explains, "[r]etention of jurisdiction provisions will be given effect, assuming there is bankruptcy court jurisdiction. But neither the bankruptcy court nor the parties can write their own jurisdictional ticket. Subject matter jurisdiction 'cannot be conferred by consent' of the

parties." *Id.* at 161 (quoting *Coffin v. Malvern Fed. Sav. Bank*, 90 F.3d 851, 854 (3d Cir.1996). Likewise, even if a proceeding is "core," that fact is insufficient to confer subject matter jurisdiction, because "'whether a particular proceeding is core represents a question wholly separate from that of subject-matter jurisdiction.'" *In re Resorts Int'l*, 372 F.3d at 163 (quoting *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 266 (3d Cir.1991)).

In *In re Resorts Int'l*, the proceeding lacked a close nexus to the bankruptcy plan, affected only matters collateral to the bankruptcy process; resolution of the claims would not affect the bankruptcy estate; would have only an incidental effect on the reorganized debtor; would not interfere with the implementation of the reorganization plan; and, although it would affect some former creditors, they did not have a close nexus to the bankruptcy plan or proceeding because they exchanged their creditor status to attain rights to certain litigation claims. Consequently, the court lacked bankruptcy jurisdiction. *In re Resorts Int'l*, 372 F.3d at 169. The same factors that caused the *In re Resorts Int'l* court to conclude that bankruptcy jurisdiction did not exist apply with even stronger force here because the factors are identical except that this litigation will not affect former creditors.[7]

The absence of any impact on the estate administration is illustrated by the Notice of LBR Liquidating Trust's Quarterly Liquidity Report (Dkt. 1753 in the LBR Bankruptcy, Case No. 21-32351, filed in the Bankruptcy Division of the Southern

---

[7] Ocean Point was a creditor but this litigation does not have any bearing upon the creditor claims it asserted.

District of Texas) filed by the Liquidating Trustee for the Liquidating Trust on February 15, 2024. That quarterly report for the fourth quarter of 2023 states that the Liquidating Trust is currently pursuing claims under the Debtors' pollution liability insurance policies and is investigating causes of action against certain parties, including former insiders of the Debtors. *See* Liquidating Trust Report - Q4 2023 at pp. 3-4, available at https://cases.stretto.com/Limetree (last accessed Apr. 5, 2024). The present dispute bears no relationship to these collection efforts.

Apropos to this case, a bankruptcy court lacks jurisdiction post-confirmation to enforce its sale order even where a pending state court action seeks to invalidate that sale order. *See In re Ray*, 624 F.3d 1124, 1127 (9th Cir. 2010). In *In re Ray*, a potential purchaser held a right of first refusal for a piece of real property owned by the debtor and a non-debtor business partner, but the bankruptcy court approved a sale to a third party and found the exercise of the right of first refusal was attempted improperly. *Id.* at 1129. The unsuccessful purchaser filed suit post-confirmation action in state court against the debtor, non-debtor seller, and the purchaser to enforce its alleged right of first refusal, and the debtor went back to the bankruptcy court, which granted summary judgment against the unsuccessful purchaser. *Id.* The Ninth Circuit overruled the bankruptcy court, finding the dispute arose under state law rather than only in the context of a bankruptcy case for purposes of "arising in" and "arising under" jurisdiction. *Id.* at 1131. The arguments in favor of "related to" jurisdiction fared no better, as the state court could handle the non-meritorious claims:

> There is no doubt that [the unsuccessful buyer's] claims would undermine the effect of the bankruptcy court's

> well-reasoned determination that Sellers did not violate the right of first refusal. However, such attacks in a second court are routine-and routinely rejected, and [the non-debtor seller] offers no convincing argument why that fact alone creates jurisdiction under § 1334(b). Therefore, the bankruptcy court did not retain "related to" jurisdiction for this breach of contract action that could have existed entirely apart from the bankruptcy proceeding and did not necessarily depend upon resolution of a substantial question of bankruptcy law.

*Id.* at 1135 (citation omitted). Likewise, in this case, while Port Hamilton is confident that the Sale Order supports its position, the Superior Court of the Virgin Islands is certainly capable of reading and interpreting the Sale Order and recognizing that it does not make *any* determination as to what property Ocean Point does, or does not, own.

As another example, the Seventh Circuit in *Zerand-Bernal Group, Inc. v. Cox* held that the bankruptcy court lacked jurisdiction to enjoin a state court successor liability action brought post-confirmation against a bankruptcy purchaser in violation of a sale order's "free and clear" provision. *Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159, 164 (7th Cir. 1994). As the Seventh Circuit reasoned, bankruptcy jurisdiction could not be so broad as to give courts powers to hear bankruptcy sale disputes indefinitely, because "[o]therwise anyone who could trace his title to a bankrupt could invoke federal jurisdiction to settle disputes affecting that property." *Id.* at 162 (quoting *In re Xonics*, 813 F.2d 127, 131 (7th Cir. 1987)). The present dispute highlights the significance of that language; if post-confirmation jurisdiction is not limited, the parties could be fighting this dispute not only before this Court and the Southern District of Texas (Ocean Point has filed a motion to enforce the Sale Order in that court and also move

to transfer this case to that court) but also before the Hovensa bankruptcy court where the liquidating plan was confirmed back on January 20, 2016.

### 3. THIS COURT IS REQUIRED TO ABSTAIN FROM THE CASE.

As demonstrated in the background section of this memorandum, Port Hamilton has meritorious claims that the property at issue belongs to it. Those claims arise under and involve complex territorial law that are best adjudicated by the Superior Court of the Virgin Islands. Under 28 U.S.C. § 1334(c), the Court is required to abstain from hearing this dispute. Section 1334(c)(2) provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in [federal] court . . . absent [§ 1334 jurisdiction], the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). In *In re Freehand H.J., Inc.*, 2007 WL 1775368 (Bankr. E.D. Pa. June 19, 2007), the court summarized the Third Circuit's standards for determining whether mandatory abstention under Section 1334(c)(2) applied:

> According to the Third Circuit, if a timely motion is made under § 1334(c)(2), a court "*must* abstain" if the following five requirements are met: (1) a proceeding is based on state law claims or state law cause of action; (2) the claim or cause of action is "related to" a case under title 11, but does not "arise under" title 11 and does not "arise in" a case under title 11; (3) federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case; (4) an action "is commenced" in a state forum of appropriate jurisdiction; and (5) the action can be "timely adjudicated"

> in a state forum of appropriate jurisdiction.[8] *Stoe v. Flaherty*, 436 F.3d 209, 213 (3d Cir.2006) (emphasis in original).

*In re Freehand H.J., Inc.*, 2007 WL 1775368 at *1.

All of those requirements are met here. First, Port Hamilton's case clearly arises under Virgin Islands law. Indeed, the First Amended Complaint explicitly invokes the binding precedent from the Virgin Islands Supreme Court that applies to render the two bills of sale at issue ineffective to transfer title. *See* First Amended Complaint, ¶71, (Doc. No. 1-1 at ECF p.48).

Second, the dispute is a non-core proceeding, as it neither "arises under" the Bankruptcy Code nor "arises in" a bankruptcy case. "'Arising under' jurisdiction involves causes of action created or determined by a statutory provision of title 11." *WRT Creditors Liquidation Tr. v. C.I.B.C. Oppenheimer Corp.*, 75 F. Supp. 2d 596, 606 (S.D. Tex. 1999) (citing *In re Wood*, 825 F.2d 90, 96 (5th Cir. 1987). Meanwhile, "'[a]rising in' jurisdiction is not based on a right expressly created by title 11, but is based on claims that have no existence outside bankruptcy." *Id.* (citing *Wood*, 825 F.2d at 97). Here, this dispute between two non-debtor parties does not arise in a bankruptcy case or arise under the Bankruptcy Code. There is no assertion that some provision of the Bankruptcy Code created the rights Ocean Point is now trying to assert. Ocean Point cannot create a core bankruptcy issue by asserting that the Sale

---

[8] "[T] imeliness in this context must be determined with respect to needs of the title 11 case and not solely by reference to the relative alacrity with which the state and federal court can be expected to proceed." *Stoe v. Flaherty*, 436 F.3d 209, 219 (3d Cir. 2006), as amended (Mar. 17, 2006)

Order determined its rights. The Sale Order plainly did not make that determination, but even if it had, that determination would have been based on application of Virgin Islands law. *See Butner v. United States*, 440 U.S. 48, 55 (1979). In other words, Ocean Point's asserted rights were not created by bankruptcy law: "If the causes of action asserted exist under state law and stand independent of the bankruptcy case, they do not 'arise in' a bankruptcy case." *In re Dune Energy, Inc.*, 575 B.R. 716, 727 (Bankr. W.D. Tex. 2017) (citing cases). Thus, the second requirement is met.

Third, federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case. Jurisdiction for purposes of this analysis is "measured at the time of commencement of the action, and not at the time of filing of notice of removal by Defendant." *Siskin Steel & Supply Co. v. Highland N., LLC*, No. 3:12-CV-105, 2013 WL 23906, at *9 (W.D. Pa. Jan. 2, 2013) (footnote omitted). The only possible alternative basis for jurisdiction is diversity of citizenship jurisdiction as there is no basis for federal question jurisdiction. But when this action was commenced, Port Hamilton was seeking injunctive relief only and not seeking damages. Port Hamilton sought injunctive relief requiring Ocean Point to continue to process Port Hamilton workers' security badges as it had been doing for the previous two years. The cost of complying with such an injunction did not rise above the $75,000 jurisdictional minimum and thus there was no basis for diversity jurisdiction when the action was commenced.

Fourth, the action was quite evidently filed in a territorial court with jurisdiction. And finally, the matter can be timely adjudicated in the Superior Court and, given that

Court's comparative familiarity with Virgin Islands law combined with the logistics of Virgin Islands lawyers having to litigate a local dispute in Texas, it is submitted that the Superior Court is in a better position to timely adjudicate the case than the bankruptcy court in Texas.

4. **EVEN IF ABSTENTION IS NOT MANDATORY, AS A MATTER OF SOUND EXERCISE OF THE COURT'S DISCRETION, IT SHOULD ABSTAIN FROM THE MATTER.**

Alternatively, to the extent abstention is not mandated under § 1334(c)(2), this Court should still exercise its discretion to abstain under § 1334(c)(1). Under 28 U.S.C. § 1334(c)(1), "courts have broad discretion to abstain from hearing state law claims whenever appropriate 'in the interest of justice, or in the interest of comity with State courts or respect for State law.'" *Matter of Gober*, 100 F.3d 1195, 1206 (5th Cir. 1996). A court can permissively abstain if not all of the elements for mandatory abstention are met. *See id.* at 1206-07 (upholding permissive abstention where claimant's "claims hinge solely on questions of state law and invoke no substantive right created by federal bankruptcy law"). Whether a court should permissively abstain "will, of necessity, be driven by equitable considerations germane to that case." *In re Schlotzsky's, Inc.*, 351 B.R. 430, 434 (Bankr. W.D. Tex. 2006).

> Courts in the Third Circuit have employed either a seven-factor or twelve-factor test to determine whether permissive abstention pursuant to 28 U.S.C. § 1334(c)(1) is appropriate. *Compare Jazz Photo Corp. v. Dreier LLP*, 2005 WL 3542468, at *7 (D.N.J. December 23, 2005) (seven-factor test) with *Bricker v. Martin*, 348 B.R. 28, 34 (W.D. Pa. 2006) (twelve-factor test). The factors in each set are "substantially similar," and for either set used, "[c]ourts should apply these factors flexibly, for their relevance and importance will vary with the particular circumstances of each case, and no one factor is necessarily determinative."

> *Shalom Torah Centers v. Philadelphia Indem. Ins. Companies*, 2011 WL 1322295, at *4 (D.N.J. Mar. 31, 2011).

*In re: John Bradley Jr.*, Case No. 3:14-CV-02500, 2024 WL 1389123, at *7 (M.D. Pa. Apr. 1, 2024). The twelve factors considered by the courts[9] are:

(1) The effect or lack thereof on the efficient administration of the estate if a court recommends abstention;

(2) The extent to which state law issues predominate over bankruptcy issues;

(3) The difficulty or unsettled nature of the applicable state law;

(4) The presence of a related proceeding commenced in state court or other nonbankruptcy court;

(5) The jurisdictional basis, if any, other than 28 U.S.C. § 1334;

(6) The degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7) The substance rather than form of an asserted "core" proceeding;

(8) The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9) The burden on the bankruptcy court's docket;

(10) The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11) The existence of a right to a jury trial; and

(12) The presence in the proceeding of nondebtor parties.

---

[9] "The Third Circuit has never adopted any factors analyzing permissive abstention because appeals of district court decisions involving permissive abstention, whether or not the court abstains, are barred." *Monmouth Inv., LLC v. Saker*, Case No. CIV.09-3063 (FLW), 2010 WL 143687, at *4 (D.N.J. Jan. 12, 2010) (internal quotation marks omitted).

*In re D'Angelo*, 475 B.R. 424, 440-442 (Bankr. E.D. Pa. 2012), *aff'd*, 491 B.R. 395 (E.D. Pa. 2013); *accord, In re Denton County Elec. Cooperative, Inc.*, 281 B.R. 876, 881, and n.10-11 (Bankr. N.D. Tex.) (citing cases).

Here, all of the factors support permissive abstention:

a. As the bankruptcy cases are post-confirmation, there are no estates to administer;

b. The issues to be determined derive from the non-bankruptcy laws of the U.S. Virgin Islands;

c. The state law at issue is complicated and particular to the U.S. Virgin Islands;

d. There is already a pending proceeding commenced in the Superior Court of the Virgin Islands;

e. There is no independent jurisdictional basis, as set forth above, and Ocean Point has not asserted any jurisdictional basis other than 28 U.S.C. § 1334(b);

f. The proceeding is remote to the bankruptcy cases because those cases have been confirmed, the parties involved are both non-debtors, and the dispute will not impact the Debtors, the Liquidating Trust, or distributions to creditors;

g. The substance of this proceeding is one based on territorial law as described in detail in the First Amended Complaint, even though Ocean Point has sought to recharacterize the reservations of rights in the Sale Order as adjudications of property rights;

h. There is no need to sever bankruptcy and non-bankruptcy claims as all of the claims can be decided in the Superior Court of the Virgin Islands;

i. The proceedings will present a burden to the Court's docket given the "complex history" of the dispute and the need to interpret complex U.S. Virgin Islands law;

j. Ocean Point's removal of the case combined with the motion to transfer venue likely represents an attempt to seek an alternative forum especially given its simultaneous filing of a motion to enforce the Sale Order in the bankruptcy case[10];

k. The proceeding is one for which there is a right to trial by jury; and

l. The proceeding only involves non-debtor parties.

Given that all of these factors weigh in favor of abstention, the Court should exercise its discretion and permissively abstain to the extent it finds mandatory abstention inapplicable here.

## CONCLUSION

The motion to remand should be granted for all of the reasons set forth above: The notice of removal was untimely; the Court lacks bankruptcy jurisdiction; abstention is mandatory; and, even if it is not, the court should exercise its discretion and abstain.

Respectfully submitted,

**ANDREW C. SIMPSON, P.C.,**
Counsel for Port Hamilton Refining and Transportation, LLLP

Dated: April 5, 2024

/s/ Andrew C. Simpson

[10] Port Hamilton has opposed the motion to enforce on grounds similar to those raised in this motion to remand.

By: Andrew C. Simpson
VI Bar No. 451
2191 Church Street, Suite 5
Christiansted, VI 00820
Tel: 340.719.3900
asimpson@coralbrief.com