**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

|  |  |  |
|---|---|---|
| PORT HAMILTON REFINING & TRANSPORTATION, LLLP, | § § § § | |
| Plaintiff, | § § | |
| vs. | § § | Case No. 1:24-cv-00004 |
| LIMETREE BAY TERMINALS, LLC *d/b/a* OCEAN POINT TERMINALS, *et al*., | § § § § | **HEARING REQUESTED** |
| Defendants. | § § | |

<u>**OCEAN POINT'S OPPOSITION TO PORT HAMILTON'S MOTION TO REMAND**</u>

Port Hamilton can't dodge the timely removal of its amended complaint based on the filing date of an original complaint which asserted different, fewer, and far less significant claims. The original complaint merely sought injunctive relief concerning facility access agreements. In glaring contrast, the amended complaint asks this Court to misconstrue a Texas bankruptcy court's sale order as divesting Ocean Point of important property interests – contrary to the language negotiated by Ocean Point, Port Hamilton, and the debtor ***in the Texas bankruptcy court*** more than two years ago – and also seeks damages and other relief absent from the original complaint. Perhaps more importantly, Port Hamilton concedes that diversity would not have supported removal of the original complaint, but exists now in light of its newly added claims for damages – which independently supports removal and renders it timely.[1]

This Court has jurisdiction under 28 U.S.C. § 1334(b) because Port Hamilton's claims require the interpretation of a bankruptcy court's sale order. Claims of that nature fall within the

---

[1] *See* Memorandum in Support of Motion to Remand ("***Memo***"), p. 17 [Dkt. 9].

core, "arising in" jurisdiction of federal courts – regardless of whether the order to be interpreted is the Texas bankruptcy court's sale order from 2021, or the HOVENSA bankruptcy court's sale order from 2015 – because subject-matter jurisdiction is not venue-specific.  And because this proceeding is core and diversity jurisdiction provides yet another basis for jurisdiction, mandatory abstention is inapplicable under 28 U.S.C. § 1334(c).  Similarly, the balance of equities decisively weighs against permissive abstention.  Finally, through its mischaracterization of the facts, Port Hamilton underscores the overwhelmingly federal nature of its claims, which turn on issues of federal bankruptcy law and court orders, not Virgin Islands law.  Remand and abstention should be denied.

**I.**      **Remand and Abstention Should be Denied.**

        **A.**      **Removal was timely because the Notice of Removal was filed within 30 days of the first pleading setting out the claim or cause of action to be removed and, alternatively, because the amended complaint created diversity jurisdiction for the first time.**

Removal of claims within a court's bankruptcy jurisdiction is timely if it occurs within "30 days after receipt . . .  of a copy of the initial pleading setting forth ***the claim or cause of action sought to be removed***[.]"  Fed. R. Bankr. P. 9027(a)(3) (emphasis added).  Although Ocean Point did not remove Port Hamilton's original complaint filed December 27, 2023,[2] Port Hamilton is wrong to argue that its Original Complaint triggered any bankruptcy-related removal deadlines. The Original Complaint sought only a temporary restraining order, preliminary injunction, and permanent injunction without asking the Court to resolve any disputes over property ownership. This is completely unlike the First Amended Complaint[3] which, among other things, asks this Court to misconstrue a sale order entered by the U.S. Bankruptcy Court for the Southern District

---

[2] *See* Notice of Removal [Dkt. 1], Ex. A-2 (the "***Original Complaint***").

[3] *See* Notice of Removal, Ex. A-4 (the "***First Amended Complaint***" or "***FAC***").

of Texas (the "***Texas Bankruptcy Court***") in such a way that would divest Ocean Point of property interests which, as discussed in Section II.A, the Texas Sale Order[4] both recognizes and protects. The First Amended Complaint also seeks monetary damages and includes numerous causes of action not in the Original Complaint.

In other words, "the claim or cause of action sought to be removed" first appeared in the First Amended Complaint, not the Original Complaint, so removal is timely under Fed. R. Bankr. P. 9027(a)(3) because it occurred within 30 days of the First Amended Complaint.[5]

A simple chart proves the point:

| Claim | Original Complaint | First Amended Complaint |
|---|---|---|
| 1 | "Temporary Restraining Order, Preliminary Injunction, and Injunction Prohibiting Ocean Point From Denying Port Hamilton's Invitees Access to the Refinery for any Reason Other Than a Failure to Meet Federal Security Requirements" | "Port Hamilton Obtained Title in Good Faith as an Innocent Purchaser of the Refinery Assets" |
| 2 | N/A | "Ocean Point Never Owned the Above-Grade Refinery Assets – Failure of Conveyance" |
| 3 | N/A | "Impossibility of Ocean Point's Ownership Claim" |
| 4 | N/A | "Illegal Denial of Access" |
| 5 | N/A | "Conversion and Trespass" |
| 6 | N/A | "Constructive Bailment" |
| 7 | N/A | "Enjoining Future Modifications to Port Hamilton's Property" |

---

[4] *See* Notice of Removal, Ex. A-4, (the "***Texas Sale Order***") (attached as Ex. D to the FAC).

[5] Port Hamilton filed its First Amended Complaint on February 1, 2024; Ocean Point filed its timely notice of removal on February 14, 2024, just two weeks thereafter. Notice of Removal, p. 1.

The Original Complaint only mentions the Texas Sale Order in one paragraph alleging something wholly uncontroversial and undisputed – that Paragraph 34 of the Texas Sale Order preserved various easements and rights of use for both parties in accordance with various agreements. *See* Original Complaint, ¶ 34. It otherwise is nothing like the First Amended Complaint, which for the first time repeatedly asks this Court to rule that Port Hamilton purchased, ***in the Texas Bankruptcy Court***, various property "free and clear" of Ocean Point's interests and ultimately seeks a ruling that "neither Ocean Point nor any other person or entity claiming an interest [in the property described in the Order], possesses such an interest and that all such . . . interests are solely owned by Port Hamilton." *See* FAC, ¶¶ 7, 16, 19-21, 59, 63–64, 146; *see also* Notice of Removal, Ex. A-4, (Dkt. 1-1, pp. 63-103) (Port Hamilton's redline of the Original Complaint vs. the First Amended Complaint, showing extensive changes). Tellingly, neither the Texas Sale Order nor the Texas APA[6] was an exhibit to the Original Complaint, but both are exhibits to the First Amended Complaint. *See* FAC, Exs. D (Texas Sale Order) and E (Texas APA).

Ocean Point was not required to jump at the single-paragraph, uncontroversial mention of the Texas Sale Order in the Original Complaint. *See In re Briar Bldg. Houston LLC*, 2021 WL 136355, at *4 (Bankr. S.D. Tex. Jan. 14, 2021) (holding the removal clock did not start until the receipt of a supplemental petition which sought an order invalidating an agreement approved by the Bankruptcy Court); *Chan Healthcare Grp., PS v. Liberty Mut. Fire Ins. Co.*, 844 F.3d 1133, 1142 (9th Cir. 2017) ("For obvious reasons, we don't charge defendants with notice of removability until they've received a paper that gives them ***enough information*** to remove.") (emphasis added) (quotation omitted). Otherwise "a defendant is [] put to the impossible choice

---

[6] *See* Notice of Removal, Ex. A-4, (the "***Texas APA***") (attached as Ex. E to the FAC).

of subjecting itself to fees and sanctions by filing a premature (and baseless) notice of removal or losing its right to remove the case by waiting too long." *Id.* A brief mention of Paragraph 3<u>4</u> of the Texas Sale Order as background for an uncontroversial point could not have put Ocean Point on notice that Port Hamilton later would radically change its pleading and make allegations contrary to the protective language recognizing its property interests in, among other places, Paragraph 3<u>1</u> of the Texas Sale Order. And because the First Amended Complaint sought, for the first time, an order invalidating Ocean Point's undivided property interests which are protected in Paragraph 31, it – not the Original Complaint – was "the initial pleading setting forth the claim or cause of action sought to be removed." Fed. R. Bankr. P. 9027(a)(3). Removal thus was timely on bankruptcy grounds.[7]

Independently, removal was timely on diversity grounds because – as Port Hamilton concedes – diversity jurisdiction did not exist at the time of the Original Complaint but first was created when Port Hamilton filed new claims for monetary relief in the First Amended Complaint. Specifically, Port Hamilton admits that the amount in controversy of the Original Complaint "***did not rise above the \$75,000 jurisdictional minimum*** and thus there was no basis for diversity jurisdiction ***when the action was commenced***." Memo, p. 17 (emphasis added). Indeed, unlike the Original Complaint, Port Hamilton's new claims seek monetary relief far above that amount. *See, e.g.*, FAC, ¶¶ 146–53 (demanding, among other things, a declaration eliminating Ocean Point's property ownership, actual damages, and punitive damages). The citizenship diversity of

---

[7] Relatedly, some courts have developed a separate exception to the 30-day rule where a plaintiff "substantially" amends a complaint. *Wilson v. Intercollegiate (Big Ten) Conference Athletic Ass'n*, 668 F.2d 962, 965-66 (7th Cir. 1982) (Posner, J.) (explaining that under 28 U.S.C. § 1446, where a plaintiff amends a complaint so that "substantially a new suit" is begun, the 30 day removal clock begins anew); *see also* Wright & Miller, 14C Fed. Prac. & Proc. Juris. § 3731 (Rev. 4th ed.) (Discussing the same and noting that "[t]his seems quite appropriate since a willingness on the part of the defendant to remain in state court to litigate a particular claim should not be interpreted as a willingness to remain in state court to adjudicate an entirely different claim.").

Port Hamilton and Ocean Point is not in dispute,[8] and removal indisputably occurred "within thirty days after receipt by the defendant . . . of a copy of an amended pleading . . . from which it may first be ascertained that the case is one which is or has become removable" on diversity grounds, *i.e.*, the First Amended Complaint. *See* 28 U.S.C. § 1446(b)(3). Removal therefore was proper and timely and should be upheld on diversity grounds under 28 U.S.C. § 1332. *See Chinchilla v. Geodis Am., Inc.*, 2024 WL 943424, at *4 (D.N.J. Mar. 5, 2024) (citing *USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190, 205 n.12 (3d Cir. 2003) for the proposition that that jurisdictional facts required to support removal may be found in later-filed litigation documents).

### B.   This Court should transfer venue to the Texas Bankruptcy Court and allow that Court to address the remand and abstention requests.

This Court need not even rule on Port Hamilton's requests for remand and abstention. Instead, it should allow the Texas Bankruptcy Court to determine those issues.

> [T]he weight of authority . . . suggests that when a bankruptcy court is simultaneously confronted with (1) a motion to transfer venue or change venue of an action which has been removed to it pursuant to 28 U.S.C. § 1452(a) and (2) a motion to remand or otherwise abstain from hearing the change of venue action pursuant to 28 U.S.C. § 1334(c) the action should be transferred to the home court of the bankruptcy to decide the issue of whether to remand or abstain from hearing the action.

*Thomason Auto Group v. China American Cooperative Automotive, Inc.,* No. 08–3365, 2009 WL 512195, at *2 (D.N.J. Feb. 27, 2009) (alteration in original) (internal citation omitted). Similarly, "[t]he determination as to whether a proceeding is core or non-core should be made by the

---

[8] Port Hamilton conceded the amount in controversy requirement was the only original bar to diversity jurisdiction. Memo, p. 17. In any event, the parties are diverse. *See* 28 U.S.C. § 1332(a); *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (noting that the citizenship of limited liability companies and partnerships is determined by the citizenship of their partners and members). Ocean Point is a limited liability company, whose sole member is a citizen of the Cayman Islands. Ocean Point's Rule 7.1 Disclosure Statement [Dkt. 3]. Port Hamilton is a limited liability limited partnership, whose partners, upon information and belief after a reasonable investigation, are not citizens of the Cayman Islands. *See Corporate Disclosure Statement of Port Hamilton Refining & Transportation, LLLP*, No. 1:23-CV-00012 (D.V.I.) [Dkt. 5].

bankruptcy court after transfer." *See Meyers v. Heffernan*, No. 10–862, 2010 WL 1009976, at *1 (D.N.J. Mar. 15, 2010). Accordingly, this Court should transfer this proceeding to the Texas Bankruptcy Court and allow it to determine whether (and if so, how) to interpret its own order.

### C. Bankruptcy jurisdiction exists because this case requires the construction of prior bankruptcy court orders.

Port Hamilton is wrong to question the existence of federal bankruptcy jurisdiction because its First Amended Complaint seeks an interpretation of the Texas Sale Order and the Texas APA it approved. *See* FAC, ¶¶ 7-13, 16-21, 59, 63-64, 146. Supreme Court precedent is clear: a bankruptcy court "plainly ha[s] jurisdiction to interpret and enforce its own prior orders." *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009); *see also In re Hovensa L.L.C.*, No. 1:15-BK-10003-MFW, 2018 WL 3203871, at *2 (Bankr. D.V.I. June 26, 2018) (citing *Travelers*). Tellingly, Port Hamilton makes no effort to distinguish *Travelers*, which is controlling.

District courts (and through referral, bankruptcy courts) have jurisdiction to hear proceedings "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). "Arising under" and "arising in" proceedings are considered "core," while "related to" proceedings are considered "non-core." *In re Seven Fields Dev. Corp.*, 505 F.3d 237, 251 (3d Cir. 2007). Courts routinely hold that proceedings which require the interpretation or enforcement of a bankruptcy court's prior orders – including sale orders and confirmation orders – are "arising in," core proceedings.[9]

---

[9] *In re Promise Healthcare Grp., LLC*, No. 18-12491, 2023 WL 4476134, at *3 (Bankr. D. Del. July 11, 2023) (holding that, even where related to jurisdiction may be lacking, "the Court's authority to enforce its prior sale order" provides a basis for jurisdiction "which falls within the 'arising in' jurisdiction."); *Martinez-Garcia v. FCA US LLC*, No. 1:18-CV-582, 2018 WL 10374703, at *2-4, 6 (E.D. Tex. Dec. 20, 2018) (holding there was "arising in" jurisdiction for personal injury claims where adjudication of such claims would require the interpretation of nine-year-old Master Transaction Agreement that was approved by the bankruptcy court); *Wilkins v. Rymes Heating Oils, Inc.*, 360 F. Supp. 3d 57, 60-61 (D.N.H. 2019) (finding core "arising in" jurisdiction to resolve removed lawsuit in which creditor of the debtor sought to hold asset purchaser liable under a theory of successor liability, where the suit required construction of the

More specifically, even a post-confirmation dispute between non-debtors is a "core proceeding" if it "require[s] the court to interpret and give effect to its previous sale orders." *See In re TE Holdcorp LLC*, No. 22-1807, 2023 WL 418059, at *2 (3d Cir. Jan. 26, 2023) (quoting *In re Allegheny Health Educ. & Rsch. Found.*, 383 F.3d 169, 174–76 (3d Cir. 2004)).[10] Port Hamilton quotes a different case out of context for the proposition that "[w]hether a particular proceeding is core represents a question wholly separate from that of subject-matter jurisdiction." Memo, p. 12 (quoting *In re Resorts Int'l, Inc.*, 372 F.3d 154, 163 (3d Cir. 2004)). Although this is true so far as it goes, because whether a matter is "core" is governed by 28 U.S.C. § 157 and whether there is jurisdiction is governed by 28 U.S.C. § 1334, it has nothing to do with the jurisdictional analysis here.

*Resorts* addressed whether a post-confirmation liquidating trust's claims against an accounting firm it had hired were within a bankruptcy court's jurisdiction. *See* 372 F.3d at 156-57. *Resorts* didn't require interpretation of a prior bankruptcy court order, didn't decide whether the claims were core or not, and ultimately found that there was not a close enough nexus between the trustee's claims and the bankruptcy in order to support "related to" jurisdiction. *See id.* at 163, 169-70. Nothing in *Resorts* supports Port Hamilton's erroneous conclusion that a case being "core" is "insufficient to confer subject matter jurisdiction." *See* Memo, p. 12; *see also* 28 U.S.C.

---

sale order, including its "free and clear" provision); *Lycoming Engines v. Superior Air Parts, Inc.*, No. 3:13-CV-1162-L, 2014 WL 1976757, at *3 (N.D. Tex. May 15, 2014) (explaining that "federal courts . . . retain significant jurisdiction after a discharge order is issued . . . over matters concerning the interpretation and enforcement of bankruptcy court orders and important substantive rights granted by the Bankruptcy Code— even if the claims would not affect the bankruptcy estate. Such matters fall within the court's 'arising in' and 'arising under' jurisdiction").

[10] *See also In re Seven Fields*, 505 F.3d at 251 (finding arising in jurisdiction over a malpractice suit between the reorganized debtor's shareholders and the debtor's financial advisor during its chapter 11 case); *In re Chiron Equities, LLC*, 552 B.R. 674, 685 (Bankr. S.D. Tex. 2016) ("In sum, this Court has jurisdiction over this adversary proceeding because it involves the interpretation and the enforcement of an order issued by this Court; namely, the Sale Order.") (citing *Travelers*, 557 U.S. at 151).

§ 157(b)(1) (recognizing that "arising in" and "arising under" cases are "core"); *Resorts*, 372 F.3d at 162 ("Cases under title 11, proceedings arising under title 11, and proceedings arising in a case under title 11 are referred to as 'core' proceedings; whereas proceedings 'related to' a case under title 11 are referred to as 'non-core' proceedings.").

Moreover, the "close nexus" jurisdiction test relied upon in *Resorts* for non-core "related to" proceedings is wholly inapplicable to core "arising in" proceedings like this case. *In re Essar Steel Minnesota, LLC*, 47 F.4th 193, 198 (3d Cir. 2022) (holding that "*Resorts'* close nexus" analytical tool "does not extend to core proceedings") (citing *In re Seven Fields*, 505 F.3d at 260). There, the Third Circuit agreed with the plaintiff who argued that "bankruptcy courts unequivocally have jurisdiction" over core proceedings, holding that "[b]ecause the contempt proceeding here arose out of the previously entered plan and confirmation order . . . it was a core proceeding over which the Bankruptcy Court had jurisdiction." *Id.* at 197, 200.[11]

Here, Port Hamilton's First Amended Complaint is a core proceeding because Port Hamilton bases its claims on its (incorrect) interpretation of the Texas Sale Order and invokes the substantive rights that only a bankruptcy court could have granted (*i.e.*, the alleged transfer of the disputed property free and clear of Ocean Point's interests). *See* FAC, ¶¶ 7-13, 16-21, 59, 63-64, 146. Port Hamilton similarly cites the Texas Sale Order throughout its Memo here, to try and

---

[11] The two out-of-circuit cases Port Hamilton cites are unpersuasive and are not binding on this Court. The Ninth Circuit has distinguished *In re Ray*, 624 F.3d 1124 (9th Cir. 2010) where, as here, "a court must interpret the bankruptcy plan and confirmation order to determine" the rights of the parties. *In re Valley Health Sys.*, 584 F. App'x 477, 479 (9th Cir. 2014). Other courts have noted *In re Ray*'s holding was premised in part on the fact that its dispute, unlike this one, "did not necessarily depend upon resolution of a substantial question of bankruptcy law." *In re Wilshire Courtyard*, 729 F.3d 1279, 1288 (9th Cir. 2013) (quoting *In re Ray*, 624 F.3d at 1135). *Zerand-Bernal Group, Inc., v. Cox*, 23 F.3d 159 (7th Cir. 1994) was decided pre-*Travelers* and should not be relied upon to the extent it takes a narrower view of a court's jurisdiction to construe its own orders. Indeed, the Seventh Circuit since has clarified that, of course, bankruptcy courts "'plainly [have] jurisdiction to interpret and enforce their own prior orders,' particularly when the court has 'explicitly retained jurisdiction to enforce its injunctions' as part of the order." *In re Kimball Hill, Inc.*, 61 F.4th 529, 533 (7th Cir. 2023).

convince this Court of the merits of its case. Memo at 5-9. And because the ability to purchase assets free and clear and purchase a co-owner's interests in estate property are substantive rights afforded by title 11, this case "arises in" federal bankruptcy jurisdiction. *See* 11 U.S.C. § 363(f), (h).[12]

To the extent Port Hamilton goes a step further by alleging that Ocean Point never acquired title to the Above-Grade Refinery Assets ("*AGRA*") in the first place – contrary to express findings in the HOVENSA, L.L.C. ("*Hovensa*") sale order from 2015[13] – Port Hamilton's First Amended Complaint merely is a collateral attack on *two* section 363 sale orders, and equally falls within

---

[12] Even if the Court found the proceeding is non-core, it would still satisfy *Resorts*' "related to" test. Courts in the Third Circuit can exercise post-confirmation "related to" jurisdiction where "there is a close nexus to the bankruptcy plan or proceeding." *Resorts Int'l*, 372 F.3d at 166. "Matters that *affect the interpretation*, implementation, consummation, execution, *or* administration of the confirmed plan will typically have the requisite close nexus." *Id.* at 167 (emphasis added). When the facts of the bankruptcy make up an "integral part" of the complaint, courts are more likely to find "related to" jurisdiction. *See, e.g., Tang v. Citic Cap. Holdings Ltd.*, No. CV 21-17008-JXN-AME, 2022 WL 6036573, at *6 (D.N.J. Oct. 7, 2022). Further, when the "proceeding concerns the scope of the property and rights acquired by [the purchaser] and requires the Court to interpret and give effect to the Sale Order, APA, and definition of '[Purchased] Assets' . . . [it] is clearly related to bankruptcy." *In re Biolitec, Inc.*, No. 13-11157 (DHS), 2015 WL 351201, at *9 (Bankr. D.N.J. Jan. 22, 2015) (citing Third Circuit cases); *see also Clark v. Chrysler Grp., LLC*, No. CIV.A.10-3030, 2010 WL 4486927, at *8 (E.D. Pa. Nov. 5, 2010) ("Because the threshold question of Defendant's liability for the claim asserted in this case would require the interpretation of the Sale Order of the Bankruptcy Court, this case is 'related to' the bankruptcy case.")

Here, the underlying facts all concern conduct that occurred *during* the bankruptcy. Indeed, it is conduct related to the negotiations and agreements between the parties. This conduct directly implicates the interpretation of the Texas Sale Order, bearing on what was (and was not) property of the debtor's estate at the time of the sale. The interpretation of the Texas Sale Order is a threshold matter, and Port Hamilton has put its interpretation at issue by basing its First Amended Complaint on it. This makes its lawsuit a "related to" proceeding.

[13] There, the Court found that "[a]s of the Closing Date, the transfer of the Purchased Assets [which expressly included the AGRA] to the Buyer . . . will be a legal, valid, and effective transfer thereof . . . " *See Order (A)(I) Approving the Sale of the Debtor's Assets, Free and Clear of All Liens, Claims, Encumbrances, and Interests; and (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (B) Granting Related Relief*, ¶ S, No. 1:15-BK-10003-MFW (Bankr. D. V.I. Dec. 1, 2015) [Dkt. No. 394] (the "*Hovensa Sale Order*"). Such transfer was self-executing. *Id.* ¶ 9.

"arising in" jurisdiction.[14]  For jurisdictional purposes, it makes no difference *which* sale order requires interpretation to resolve Port Hamilton's claims, this case is a core, "arising in" proceeding within this Court's bankruptcy jurisdiction.[15]

> **D.    Mandatory abstention is inapplicable because this proceeding is based on federal law, is core, and diversity jurisdiction provides another basis for jurisdiction.**

Mandatory abstention is inapplicable.  Mandatory abstention is only required if: "(1) the proceeding is based on a state law claim or cause of action; (2) the claim or cause of action is related to a case under title 11, but does not arise under title 11 and does not arise in a case under title 11, (3) federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case; (4) an action is commenced in a state forum of appropriate jurisdiction; and (5) the action can be timely adjudicated in a state forum of appropriate jurisdiction."  *Stoe v. Flaherty*, 436 F.3d 209, 213 (3d Cir. 2006) (internal quotation omitted).

First, this proceeding is based on federal bankruptcy law, even though Port Hamilton portrays it as a matter of Virgin Islands law.  Port Hamilton's action to quiet title is based on provisions of the Texas Sale Order entered by the Texas Bankruptcy Court, which Port Hamilton contends exercised the power of federal bankruptcy law to transfer Limetree Bay Refining, LLC ("**LBR**")'s property free and clear of Ocean Point's interest.  *See* FAC, ¶¶ 7-13, 16-21, 59, 63-64 146.  Port Hamilton also apparently challenges the validity of a transfer of property by the Hovensa

---

[14] Similarly, in the alternative, this collateral attack would satisfy the close nexus test for "related to" jurisdiction.  *See, e.g.*, *In re Biolitec*, 2015 WL 351201, at *9.

[15] *See, e.g.*, *Maritime. Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1211–12 (3d Cir. 1991) (bankruptcy jurisdiction is vested in all district courts, not only the district court "presently exercising jurisdiction over a particular bankruptcy case"); *Martin v. Chrysler Grp., LLC*, No. 6:12-CV-00060, 2013 WL 5308245, at *4 (W.D. Va. Sept. 20, 2013) (finding that a case requiring the interpretation of another bankruptcy court's sale order was a core, arising in proceeding, which conferred bankruptcy jurisdiction on the court hearing the remand and transfer briefing); *see also id.* at *4 n.6 (noting courts in numerous jurisdictions have found the same).

Sale Order – also a question of federal law.[16]  Second, for all the reasons discussed above, this is a core proceeding.[17]  Third, as Port Hamilton admitted in its Memo, diversity jurisdiction is an independent basis for federal jurisdiction. *See* discussion *supra* pp. 5–6.  Accordingly, because at least three of its five essential elements are not met, mandatory abstention is inapplicable.

### E.     The Court should not permissively abstain under 28 U.S.C. § 1334(c)(1).

Permissive abstention under 28 U.S.C. § 1334(c)(1) likewise is inappropriate.  Indeed, "[a]bstention is the exception, not the rule."  *Carnero G&P, LLC v. SN EF Maverick LLC*, 657 B.R. 202, 213 (S.D. Tex. 2024) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976)).  Courts typically weigh the following equitable factors:

> (1) the effect on the efficient administration of the estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence of non-debtor parties.

*In re Carriage House Condominiums L.P.*, 415 B.R. 133, 146 (Bankr. E.D. Pa. 2009); *Carnero*, 657 B.R. at 213-14 (same).  The relevance and importance of each factor varies on a case-by-case basis, and "[c]ourts should apply them flexibly." *Carnero*, 657 B.R. at 214.  When courts find that

---

[16] What constitutes a "transfer" – which the Hovensa Sale Order found would lawfully occur upon closing, Hovensa Sale Order, ¶ S – is a matter of federal law, and Port Hamilton's collateral attack on the validity of the Hovensa Sale Order conflicts with federal principles of law concerning the consequences of *in rem* section 363 sale orders.  *See* discussion *infra* Section II.B.

[17] Port Hamilton also misapplies out-of-Circuit case law.  For example, *In re Dune Energy, Inc.* discussed how the creation of a liquidating trust authorized to "pursue pre-bankruptcy law causes of action" does not automatically create "arising in" jurisdiction for such pre-bankruptcy, independent state law claims.  575 B.R. 716, 727 (Bankr. W.D. Tex. 2017).  It did not concern, as here, the interpretation and enforcement of a sale order.

claims made in state court could violate a bankruptcy court's order, they often find that "factors favoring proceeding with the case [in federal court] predominate over the factors favoring abstention." *See, e.g.*, *In re McDermott Int'l, Inc.*, No. 4:21-CV-3369, 2023 WL 8215341, at *7 (S.D. Tex. Jan. 9, 2023). Here, the factors weigh decisively against permissive abstention:

| Factor | Favors Abstention? | Explanation |
|---|---|---|
| **Factor 1: Efficient administration of the estate.** | **No.** | This matter concerns what was and was not property of the LBR estate in the Texas Bankruptcy Court and what LBR agreed not to sell (*i.e.*, anything not property of its own estate and, more specifically, Ocean Point's undivided interest of shared services systems). Leaving the interpretation and enforcement of the Texas Sale Order to a territorial court in the Virgin Islands runs contrary to federal interests and public policy favoring the ability of bankruptcy courts to interpret their own orders. This authority is necessary to the efficient administration of bankruptcy estates nationwide, and it makes no difference to the analysis whether the claims are post-confirmation. |
| **Factor 2: Lack of predomination of territorial law.** | **No.** | Territorial law issues do not predominate over bankruptcy issues. Port Hamilton's claims necessarily require the interpretation of the Texas Sale Order and whether LBR sold jointly owned assets free and clear of Ocean Point's interests (which did not happen). Likewise, any interpretation of the Hovensa Sale Order and whether Ocean Point validly acquired the AGRA turns on federal bankruptcy law, not territorial law, because the Hovensa Sale Order expressly found that it created a valid transfer of the AGRA. Further, interests favoring adjudication in federal court tend to predominate when the plaintiff's state (here, territorial) law claims would violate a bankruptcy court's order. *See In re McDermott Int'l*, 2023 WL 8215341, at *7. |
| **Factor 3: Application of territorial law is not difficult.** | **No.** | Principles of federal bankruptcy law related to *in rem* section 363 sales and the meaning of Paragraph 31 in the Texas Sale Order supersede any questions of territorial law which might otherwise be raised. Again, these are the key issues. Port Hamilton's claims turn on the application of bankruptcy law, even if they appear at first glance to be issues of territorial law. |

| Factor | Favors Abstention? | Explanation |
|---|---|---|
| **Factor 4: This proceeding is a collateral attack on the Sale Order.** | **No.** | Although Port Hamilton filed a lawsuit in territorial court, this Court should not credit Port Hamilton's attempt to circumvent the Texas Bankruptcy Court's clear jurisdiction to interpret and enforce its own orders and the forum-selection clause by which Port Hamilton is bound.[18]  Doing so would *reward* state and territorial court litigants who want to contravene the orders of bankruptcy courts and mandatory forum-selection clauses. *See In re McDermott Int'l*, 2023 WL 8215341, at *7. |
| **Factor 5: Jurisdictional basis.** | **No.** | The existence of diversity jurisdiction over the current dispute by virtue of the First Amended Complaint, which was ascertainable by Ocean Point for the first time less than 30 days before removal, provides another basis for federal jurisdiction. *See* discussion *supra* pp. 5–6. |
| **Factor 6: Relatedness to the bankruptcy case.** | **No.** | Although a plan has been confirmed in the Texas Bankruptcy Court and the parties to this dispute are non-debtors, this proceeding cuts to the heart of Texas Sale Order and Texas Confirmation Order.[19]  Indeed, it concerns the adjudication of rights that were expressly preserved in both orders. *See* Texas Sale Order, ¶ 31; Texas Confirmation Order, ¶ 17. |
| **Factor 7: Substance of the core proceeding.** | **No.** | The substance of this dispute is federal bankruptcy law, *i.e.*, the interpretation of the Texas Sale Order. *See In re McDermott Int'l*, 2023 WL 8215341, at *6 ("the substance goes directly to the interpretation of the exculpation clause and thus has all the trappings of a core proceeding").  Further, Port Hamilton's argument that the Hovensa Sale Order did not constitute a valid transfer of property rights in the AGRA is another collateral attack on a different bankruptcy sale order.  Ocean Point did not put the interpretation and validity of these orders at issue; Port Hamilton did. |
| **Factor 8: Severability.** | **No.** | The threshold issue for all of Port Hamilton's claims is what was property of the LBR bankruptcy estate and what was (and was not) transferred to Port Hamilton under the Texas Sale Order.  For example, Port Hamilton's conversion claim will fail, among other reasons, once the Texas Bankruptcy Court determines that Ocean Point owns an undivided interest in the disputed property.  To the extent this Court determines certain claims are severable, it should still transfer the others to the Texas Bankruptcy Court. |

---

[18] *See* Ocean Point's Motion to Transfer at 7-10 [Dkt. 2].

[19] The "***Texas Confirmation Order***" means the *Order Approving Disclosure Statement on a Final Basis and Confirming Chapter 11 Plan of Liquidation of Limetree Bay Services, LLC and Affiliated Debtors*, No. 21-32351 (Bakr. S.D. Tex.) [Dkt. 1454].

14

Case: 1:24-cv-00004-WAL-EAH    Document #: 12    Filed: 04/19/24    Page 15 of 19


| Factor | Favors Abstention? | Explanation |
|---|---|---|
| **Factor 9: No significant burden.** | **No.** | These claims will not burden this Court's docket, because they should be properly transferred to the Texas Bankruptcy Court. Port Hamilton's burden argument is strange as applied to the Texas Bankruptcy Court, because much of this case's "complex history" occurred in the Texas Bankruptcy Court. Furthermore, the Texas Bankruptcy Court is more than capable of interpreting Virgin Islands property law because of its experience handling LBR's bankruptcy. |
| **Factor 10: Forum shopping.** | **No.** | Port Hamilton, not Ocean Point, is the party that engaged in forum shopping by filing this action in the territorial court instead of the Texas Bankruptcy Court, as provided for by the Texas Sale Order and Texas APA. Further, wanting a bankruptcy court to interpret its own order is not a claim for forum shopping "in the classic sense, as the only forum that should decide the effect of the confirmation order is the bankruptcy court that issued it." *Id.* at *6. |
| **Factor 11: Jury trial.** | **No.** | The asset purchase agreements in the Texas and Hovensa bankruptcy cases both include broad jury-trial waivers. *See* Texas APA § 11.10; Hovensa APA § 11.11[20]. |
| **Factor 12: presence of non-debtors** | **Yes.** | The parties are non-debtors, but this factor is outweighed by the others. |

Permissive abstention is not warranted here. The great weight of the factors counsels against abstention. Substantive issues of federal bankruptcy law predominate over any issues of territorial law, especially when considered alongside the important federal interest in the finality of bankruptcy sales. Port Hamilton cannot have it both ways. It bases its suit on the interpretation of the Texas Sale Order, but it does not want the Texas Bankruptcy Court to say what its order means. This tactic easily should be rejected.

---

[20] The "***Hovensa APA***" means the Amended and Restated Asset purchase Agreement approved by the Bankruptcy Division of this Court, available at No. 1:15-bk-10003-MFW (Bankr. D.V.I.) [Dkt. 394-1].

II.    **Port Hamilton's Version of Events Is Incorrect, and Its Discussion of the Merits Belies the Federal Nature of the First Amended Complaint.**

Port Hamilton's arguments misconstrue the Texas Sale Order and misunderstand the powers of federal bankruptcy courts.  Ocean Point's counterarguments illustrate how this is a dispute over the impact of federal bankruptcy law and court orders.

A.    **The Texas Sale Order both recognized and preserved Ocean Point's undivided interest of shared services systems.**

Although the Texas Sale Order conveyed substantially all of the Debtors' property, Paragraph 31 made clear that it only authorized the sale of *the Debtors*'[21] undivided interest of shared services systems.  *See* Texas Sale Order, ¶ 31.  The disputed language in Paragraph 31 evolved over several phases of extensive negotiations between the Debtors, Ocean Point, and Port Hamilton.  As finalized, the Texas Sale Order is explicit that nothing therein "authorize[d], permit[ed] or shall be deemed to authorize or permit, the Debtors to sell, transfer or assign to the Purchaser or any other party any Non-Debtor Asset (as defined in the Bidding Procedures) ***including, for the avoidance of doubt, the*** *LBT Entities' undivided interest of shared services* *systems,* any real property owned by the LBT Entities, or the rights of the LBT Entities under any Permits."  *Id.* ¶ 31 (emphasis added).  The Texas Sale Order's use of  "the," rather than "any," when referring to Ocean Point's undivided interests of shared services systems is an express recognition of those interests, in language extensively negotiated by the parties for that purpose.[22]

---

[21] The Texas Sale Order found that the "Purchased Assets constitute[d] property of the Debtors' estates." Texas Sale Order, ¶ K.  "Purchased Assets" included all of the Debtors' Property other than Excluded Assets.  Texas APA § 1.1.

[22] A textual analysis reveals that this difference, indeed, has a significant meaning.  The "surplusage canon" states that "[i]f possible, every word and every provision is to be given effect.  None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence."  A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 5 (2012).  Finding that "the" and "any" have the same meaning here would render their separate use meaningless, and violates the surplusage canon.

Although the parties used "(if any)" qualifying language in Paragraph 34 – which relates only to the existence of rights of access – it cannot be transposed to Paragraph 31.[23]  As a result, the Texas Bankruptcy Court determined in Paragraph 31 that (a) Ocean Point owned an undivided interest of shared services systems, and (b) LBR could not sell that interest because it was a "Non-Debtor Asset" outside LBR's estate.

Ocean Point's rights also are protected by the Texas Confirmation Order.  There, after ordering that the Purchaser's rights under the Texas Sale Order were preserved notwithstanding anything else in the plan of reorganization, the Texas Bankruptcy Court ordered that "[a]ll rights of [Ocean Point] under the Sale Order are similarly preserved." *Id.* ¶ 17.  The Texas Bankruptcy Court also retained jurisdiction to enforce disputes over the Texas Sale Order. *Id.* ¶ 47; *Id.*, Ex. A § XV(11).

If Port Hamilton had wanted to purchase the disputed property free and clear of Ocean Point's undivided interest in the shared services systems, it could have insisted upon an order under sections 363(f)(4) or 363(h) from the Texas Bankruptcy Court.[24]  But it did not.  As a result, Port Hamilton only acquired LBR's undivided interest in the shared services systems; not Ocean Point's.

**B.    Under federal bankruptcy law, Ocean Point validly acquired its interests in the disputed property, and Port Hamilton is barred from contesting it.**

Port Hamilton also argues that Ocean Point never acquired an interest in the AGRA from the Hovensa bankruptcy case, citing U.S. Virgin Islands law in support.  But years before this

---

[23] The "presumption of consistent usage principle" means that if a word or term is specifically used in a certain place and excluded in another, courts should not read that term into the section from which it has been excluded.  Scalia & Garner, *supra*, at 112

[24] Section 363(f)(4) permits a Debtor to sell its property free and clear of any interest if such interest is "in bona fide dispute."  Similarly, section 363(h) allows for a sale of a co-owner's undivided interest in estate property under certain circumstances.

dispute, Ocean Point acquired the AGRA through an order of the Bankruptcy Division of this Court, under federal bankruptcy law. *See* Hovensa Sale Order, ¶¶ S, 8–9.

"What constitutes a transfer and when it is complete is a matter of federal [bankruptcy] law." *In re Laughlin*, 602 F.3d 417, 421–22 (5th Cir. 2010) (citing *Barnhill v. Johnson*, 503 U.S. 393, 397 (1992)). The Bankruptcy Code states that a "transfer" includes "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with—(i) property; or (ii) an interest in property." 11 U.S.C. § 101(54)(D).

The Hovensa bankruptcy sale was an *in rem* proceeding which adjudicated rights in the Hovensa bankruptcy estate's property "against the world," and thus the Hovensa Sale Order constituted a valid transfer of the AGRA as a matter of federal bankruptcy law under section 363.[25] The court specifically found that "[a]s of the Closing Date, the transfer of the Purchased Assets to the Buyer . . . will be a legal, valid, and effective transfer thereof . . . " Hovensa Sale Order, ¶ S.[26] Further, it ordered that "[t]he provisions of this Sale Order authorizing and approving the transfer of the Purchased Assets free and clear of Interests shall be self-executing, and neither the Debtor nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of

---

[25] Courts have recognized that "a proceeding under section 363 is an in rem proceeding. It transfers property rights, and property rights are rights good against the world, not just against parties to a judgment or persons with notice of the proceeding." *Gekas v. Pipin (In re Met-L-Wood Corp.)*, 861 F.2d 1012, 1017 (7th Cir. 1988); *Regions Bank v. J.R. Oil Co., L.L.C.*, 387 F.3d 721, 731-32 (8th Cir. 2004) (same); *In re Shipley Garcia Enterprises LLC*, No. 11-20016, 2014 WL 1329252, at *12 (Bankr. S.D. Tex. Mar. 28, 2014) (same). In *Gekas*, for example, the court barred certain non-parties' attack on a sale order because, as an in rem proceeding, the sale order adjudicated property rights "against the world." *Id.* at 1016-17, 1019 ("Unless bankruptcy sales are final when made, rather than subject to being ripped open years later, high prices will not be offered for the assets of bankrupt firms—and the principal losers (pun intended) will be unsecured creditors.").

[26] It also ordered that "[u]pon and as of the Closing Date, such transfer [of the Purchased Assets in accordance with the APA and Transaction Documents] shall constitute a legal, valid, binding and effective transfer of such purchased assets . . . " Hovensa Sale Order, ¶ 8.

this Sale Order." *Id*. ¶ 9.  The Purchased Assets expressly included, among other things, the AGRA.  Hovensa APA § 2.1(a)(xv).  As in *Gekas*, the federal interest in the finality of bankruptcy sales protects the Hovensa Sale Order's transfer of property and prevents Port Hamilton from belatedly denying it here – based on Virgin Islands territorial law or otherwise.

## III.    Conclusion

For the foregoing reasons, Ocean Point respectfully requests that Port Hamilton's motion to remand be denied and such other and further relief as is just and proper.

Respectfully submitted,

**REED SMITH LLP**

Dated:  April 19, 2024          By:    */s/ Mark W. Eckard*
                                       Mark W. Eckard (1051)
                                       1201 N. Market Street, Suite 1500
                                       Wilmington, DE  19801
                                       Telephone:  (302) 778-7546
                                       Facsimile:  (302) 778-7575
                                       Email:  MEckard@ReedSmith.com

                                       Counsel to Limetree Bay Terminals, LLC *d/b/a*
                                       Ocean Point Terminals