# EXHIBIT A

## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| PORT HAMILTON REFINING & TRANSPORTATION, LLLP, | §<br>§<br>§<br>§ | |
| Plaintiff/Counter-Defendant, | §<br>§ | |
| vs. | §<br>§ | Case No. 1:24-cv-00004 |
| LIMETREE BAY TERMINALS, LLC *d/b/a* OCEAN POINT TERMINALS, *et al.*, | §<br>§<br>§<br>§<br>§<br>§ | |
| ~~Defendants~~Defendant/Counter-Plaintiff. | § | |

**OCEAN POINT'S FIRST AMENDED ANSWER TO ~~DEFENDANT'S ANSWER TO PLAINTIFF'S~~PLAINTIFF/COUNTER-DEFENDANT'S FIRST AMENDED ~~COMPLAINT~~ COMPLAINT AND OCEAN POINT'S ORIGINAL COUNTERCLAIM**

Defendant/Counter-Plaintiff Limetree Bay Terminals, LLC *d/b/a* Ocean Point Terminals ("***Ocean Point***") hereby ~~answers~~files its First Amended Answer to the First Amended Complaint (the "***FAC***") of Port Hamilton Refining & Transportation, LLLP ("***Port Hamilton***") ~~and~~, raises defenses, and asserts a counterclaim against Port Hamilton.

## ANSWER

Unless expressly admitted, all allegations in the FAC, including any allegations contained or implied anywhere in the FAC (whether in the body, headings, footnotes, or otherwise) are denied. Unless otherwise defined herein, Ocean Point uses capitalized terms as defined in the FAC.

## PARTIES AND JURISDICTION

1.    Port Hamilton is a Virgin Islands Limited Liability Limited Partnership that owns the oil refinery situated on the South Shore of St. Croix.

**ANSWER TO PARAGRAPH 1:**

Denied solely to the extent Port Hamilton alleges, without defining "the oil refinery" beyond its general geographic location, ownership by Port Hamilton of any property actually owned by Ocean Point or other third parties.  Otherwise, admitted.

2.    Limetree Bay Terminals, LLC is a Virgin Islands limited liability corporation that owns the oil terminal situated on the South Shore of St. Croix and does business as Ocean Point Terminals.

**ANSWER TO PARAGRAPH 2:**

Denied solely to the extent Port Hamilton alleges, without defining "the oil terminal" beyond its general geographic location, ownership by Ocean Point of any property actually owned by Port Hamilton or other third parties.  Otherwise, admitted.

3.    Defendants include any other person or entity claiming title to the property that is the subject of this complaint:

> Refinery Plot 1-AB, (comprising 6.8818 U.S. acres) and Remainder of Refinery Plot No. 1 (comprising 114.9456 U.S. acres), over portions of Estates Blessing and Hope, King and Queen Quarters, St. Croix, U.S. Virgin Islands as shown on OLG Drawing No. A9-l 40-C0 19, dated May 24, 2019;
>
> Remainder of Refinery Plot No. 2 (comprising 26.5670 U.S. acres), over portions of Estates Blessing, Hope and Jerusalem, King and Queen Quarters, St. Croix, U.S. Virgin Islands as shown on OLG Drawing No. A9-142-C019, dated May 30, 2019; and
>
> Remainder of Refinery Plot No. 3 (comprising 184.4305 U.S. acres), over portions of Estates Jerusalem, Figtree Hill and Castle Coakley Land, Queen Quarter, St. Croix, U.S. Virgin Islands as shown on OLG Drawing No. A9-141-C019, dated May 24, 2019.

**ANSWER TO PARAGRAPH 3:**

Paragraph 3 offers Port Hamilton's legal conclusion about named defendants in the FAC to which no response is required.  To the extent an answer is required, Ocean Point admits that

Port Hamilton purports to name as a defendant any other person or entity claiming title to the plots (or portions thereof) referenced in Paragraph 3.

4.      Out of an abundance of caution, Port Hamilton has provided notice of this action to:

      a.      the Hovensa Environmental Response Trust;

      b.      Richard H. Dollison, Esq. the counsel for the "Reorganized Debtor" (Hovensa) in *In re Hovensa, L.L.C.* in *In re: Hovensa, L.L.C.*[sic], Case No. 15-10003 filed in the Bankruptcy Division of the District Court of the Virgin Islands ("The Hovensa Bankruptcy Case") and

      c.      David M. Dunn, the Liquidating Trustee of the LBR Liquidating Trust (c/o Nicholas C. Brown, Esq., ASK LLP, 2600 Eagan Woods Drive, Ste. 400, St. Paul, MN 55121) in *In re: Limetree Bay Services, LLC, et al.*, Case No. 21-32351 filed in the United States Bankruptcy Court for the Southern District of Texas ("The LBR Bankruptcy Case");

so that they may assert a claim if they claim any right or title to the property in dispute; however, Port Hamilton has not named these entities as defendants as it does not believe that they assert any ownership interest in the property that is the subject of this complaint.

**ANSWER TO PARAGRAPH 4:**

Paragraph 4 states Port Hamilton's legal conclusions as to whether various parties should be named in this lawsuit, to which no response is required.  To the extent a response is required, Ocean Point lacks knowledge or information sufficient to form a belief as to whether Port Hamilton has provided notice of this action to the parties listed in Paragraph 4.  Ocean Point further lacks knowledge or information sufficient to form a belief as to whether such parties assert any ownership interest in the property that is the subject of this complaint.  Otherwise, denied.

5.      This Court has jurisdiction under 4 V.I.C. § 76(a).

**ANSWER TO PARAGRAPH 5:**

Paragraph 5 of the FAC is no longer relevant following removal to federal court.  To the extent a response is required, Ocean Point avers that jurisdiction is proper under 28 U.S.C. § 1334.

## FACTS

6.     In 2021, Limetree Bay Refining, LLC ("LBR"), a company formerly affiliated with Ocean Point, declared bankruptcy under Chapter 7 of the United States Bankruptcy Code.

**ANSWER TO PARAGRAPH 6:**

Ocean Point denies that Limetree Bay Refining, LLC ("*LBR*") declared bankruptcy under Chapter 7 of the United States Bankruptcy Code.  Instead, Ocean Point admits that, in 2021, LBR filed a voluntary bankruptcy petition under chapter 11 of the United States Bankruptcy Code. Ocean Point further admits that LBR and Ocean Point formerly were affiliated companies.

7.     On December 21, 2021, the bankruptcy court overseeing The LBR Bankruptcy Case entered an Order ("the Sale Order") authorizing the sale of substantially all of LBR's assets "free and clear of liens, claims, encumbrances, and interests" to Port Hamilton.

**ANSWER TO PARAGRAPH 7:**

Ocean Point admits that, on December 21, 2021, the Bankruptcy Court for the Southern District of Texas entered an *Order (I) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Debtors to Perform under the Asset Purchase Agreement, (III) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* (the "***Sale Order***"), and further avers that the Sale Order speaks for itself and is the best evidence of its contents and other findings and conclusions.

8.     A true copy of the Sale Order, without the exhibits to it, is attached to this complaint as Exhibit D.[1]

**ANSWER TO PARAGRAPH 8:**

Admitted.

---

[1] The original complaint in this matter had Exhibits A-C attached to it.  Exhibits attached to this first amended complaint begin with Exhibit D.

9.     Section I of the Sale Order states, "The Sale of the Purchased Assets pursuant to and in accordance with the terms of the APA and associated Transaction Documents is hereby approved."[2]

**ANSWER TO PARAGRAPH 9:**

Ocean Point admits that Paragraph 9 contains an accurate quotation from Section 1, ¶ 1 of the Sale Order, and further avers that the Sale Order speaks for itself and is the best evidence of its contents and other findings and conclusions, including the definitions of the terms in Footnote 2 of the Sale Order.

10.     A true copy of the APA is attached as Exhibit E.

**ANSWER TO PARAGRAPH 10:**

Admitted.

11.     "Purchased Assets" are defined in the APA as including:

the following assets owned by Sellers as of the Closing Date, except to the extent that any of the following are also enumerated in Section 1.3 as being Excluded Assets:

* * *

(b)     *the real property* described on Schedule 1.2(b), ***together with all*** easements, **appurtenances**, rights and other hereditaments appurtenant to such real property (collectively, the "Purchased Real Property"), including Sellers' easements, use rights, or options to purchase, or such rights with respect to Purchased Real Property as are used or held for use in the Business; provided, that the agreements, if any, establishing such rights are assigned to Purchaser;

(c)     all Improvements;

* * *

Exh. E at ¶1.2 (Emphasis added.)

---

[2] "APA" is a defined term in the Sale Order and refers to the Asset Purchase Agreement between LBR and its co-debtors-in-bankruptcy (as Sellers) and Port Hamilton (as Buyer).  By virtue of footnote 2 of the Sale Order, "Purchased Assets" as used throughout the Sale Order has the definition ascribed to it in the APA.

**ANSWER TO PARAGRAPH 11:**

Ocean Point admits that Paragraph 11 contains an accurate partial quotation from the APA, with emphasis added, and further avers that the APA speaks for itself and is the best evidence of its contents.

12.    The "Excluded Assets" enumerated in Section 1.3 have no bearing upon the title issues raised in this complaint.

**ANSWER TO PARAGRAPH 12:**

Paragraph 12 of the FAC states legal conclusions to which no response is required.  To the extent a response is required, denied.

13.    Schedule 1.2(b) provides:

**Schedule 1.2(b)**

**Purchased Real Property**

The real property conveyed to Limetree Bay Refining, LLC pursuant to that certain Quit Claim Deed executed by Project Navigator, Ltd, a California corporation, in favor of Limetree Bay Refining, LLC dated July 14, 2019 and bearing document number 2019003312, as recorded in the Public Records of St. Croix, United States Virgin Islands; and the real property conveyed to Limetree Bay Refining, LLC pursuant to that certain Quit Claim Deed executed by Project Navigator, Ltd, a California corporation, in favor of Limetree Bay Refining, LLC dated November 15, 2018, bearing document number 2018004645, as recorded in the Public Records of St. Croix, United States Virgin Islands; and the right, if any, of Limetree Bay Refining, LLC to exercise any unexercised options to acquire the interest in the Refinery Property and the Refinery Submerged (Reclaimed) Land, as identified in Exhibit A of that certain Option Agreement effective as of January 4, 2016 and bearing document number 2018004472, as well as document number 201800481, recorded in the Public Records of St. Croix, United States Virgin Islands; and any Refinery Property and Refinery Submerged (Reclaimed) Land conveyed to Limetree Bay Refining, LLC, if any; the assignment of ingress and egress easement as well as any other access easements on the subject refinery/terminal property held by Limetree Bay Refining, LLC, if any; and any other real property in St. Croix, Territory of the United States Virgin Islands, owned by Limetree Bay Refining, LLC, as

more particularly described in that certain First American Title Insurance Company ALT Owner's Policy having an effective date of October 11, 2019 at 2:32 PM, as amended to update the effective date.

**ANSWER TO PARAGRAPH 13:**

Ocean Point admits that Paragraph 13 contains an accurate quotation from the APA, and

further avers that the APA speaks for itself and is the best evidence of its contents.

14.    The deed "bearing document number 2019003312" conveyed the following real property to LBR (and Port Hamilton therefore acquired same by virtue of the APA and Sale Order):

> **Refinery Plot 1-AB**, (comprising 6.8818 U.S. acres) and **Remainder of Refinery Plot No. 1** (comprising 114.9456 U.S. acres), over portions of Estates Blessing and Hope, King and Queen Quarters, St. Croix, U.S. Virgin Islands as shown on OLG Drawing No. A9-l 40-C0 19, dated May 24, 2019;
>
> **Remainder of Refinery Plot No. 2** (comprising 26.5670 U.S. acres), over portions of Estates Blessing, Hope and Jerusalem, King and Queen Quarters, St. Croix, U.S. Virgin Islands as shown on OLG Drawing No. A9-142-C019, dated May 30, 2019; and
>
> **Remainder of Refinery Plot No. 3** (comprising 184.4305 U.S. acres), over portions of Estates Jerusalem, Figtree Hill and Castle Coakley Land, Queen Quarter, St. Croix, U.S. Virgin Islands as shown on OLG Drawing No. A9-141-C019, dated May 24, 2019.

**ANSWER TO PARAGRAPH 14:**

Ocean Point admits that Paragraph 14 contains an accurate partial quotation from the deed

"bearing document number 2019003312," and further avers that such deed: (a) speaks for itself,

(b) is the best evidence of its contents, and (c) ***expressly excluded from the conveyance to LBR,***

***among other things, (i) "the Above Grade Refinery Assets, as defined in the Purchase***

***Agreement*** [defined in such deed as the Amended and Restated Asset Purchase Agreement, dated

as of January 4, 2016 by and among HOVENSA L.L.C., Hess Oil Virgin Islands Corp., Limetree

Bay Terminals, LLC and Limetree Bay Holdings, LLC]" and (ii) "the 'Excluded Assets' . . . as

that term is defined in Section 2.2 of the [Purchase Agreement]." *See* FAC Ex. F, p. 1 (emphasis

added).  In addition, the conveyance in such deed was "specifically made subject to the rights and obligations contained in the easement agreements, shared services agreement, remediation agreements and other agreements pertaining to the ownership and operation of the Purchased Real Property, Option Refinery Property, Leased and the Excluded Real Property entered into as part of the consummation of the transactions described in the Purchase Agreement relating to, among other things, the Oil Facilities, including the Refinery Site Fee Simple Property, Submerged Lands, Excluded Lands."

Subject to the foregoing, Ocean Point admits that the real property conveyed to LBR under the Quit Claim Deed bearing document number 2019003312 was "Purchased Real Property" defined in APA § 1.2(b) and thus acquired by Port Hamilton by virtue of the APA and the Sale Order.

15.     A true copy of the deed "bearing document number 2019003312" is attached as Exhibit F.

**ANSWER TO PARAGRAPH 15:**

Admitted.

16.     The "Improvements" referenced in Paragraph 11 of this complaint and included in the definition of "Purchased Assets" are defined in Appendix 1 of the APA (Exh. E) as:

> ***any and all buildings, structures, fixtures or other improvements owned by or leased to a Seller that are attached or affixed to the Business Real Property*** (including all construction and work-in-progress), ***as well as*** above ground and underground piping and storage tanks, canopies, signage, terminals, ***fixtures, pumps and appurtenances, equipment, personal property of a permanent nature and other similar facilities***, including, without limitation, all of the Sellers' rights, title and interests, in and to the assets specifically identified on Schedule 1.2(m);

Exh. E, Appendix 1 (emphasis added).

**ANSWER TO PARAGRAPH 16:**

Ocean Point admits that Paragraph 16 contains an accurate partial quotation from the APA, with emphasis added, and further avers that the APA speaks for itself and is the best evidence of its contents.  As to the reference to Paragraph 11 of the FAC in Paragraph 16, Ocean Point incorporates its answer to Paragraph 11.

17.    The "Business Real Property" referenced in Paragraph 16 of this Complaint is defined in Appendix 1 of the APA as:

> the **Purchased Real Property**[3] and the real property subject to the Real Property Leases, **in each case together with all** easements, **appurtenances**, rights and leases, and other hereditaments appurtenant to such land and all the estates and rights of Sellers in and to such land.

(Emphasis added.)

**ANSWER TO PARAGRAPH 17:**

Ocean Point admits that Paragraph 17 contains an accurate quotation from the APA, with emphasis added, and further avers that the APA speaks for itself and is the best evidence of its contents.  As to the references to Paragraph 13 and 16, respectively, Ocean Point incorporates its answers to Paragraph 13 and 16.

18.    Thus, under the plain language of the Sale Order and the APA, Port Hamilton purchased Refinery Plot 1-AB, and the Remainders of Refinery Plot Nos. 1, 2 and 3 along with all of the appurtenances to, and improvements upon, same.

**ANSWER TO PARAGRAPH 18:**

Paragraph 18 of the FAC states legal conclusions to which no response is required.  To the extent a response is required, denied.

19.    The Sale Order expressly recognizes that Port Hamilton "would not have entered into the APA and would not have consummated the Sale, thus adversely affecting the Debtors,

---

[3] The definition of "Purchased Real Property" is quoted in Paragraph 13 of this Complaint.

their estates, and their creditors, if the Sale was not free and clear of all Liens, Claims, and Interests (each as defined herein) of any kind or nature whatsoever." Exhibit D, ¶V.

**ANSWER TO PARAGRAPH 19:**

Ocean Point admits that Paragraph 19 contains an accurate partial quotation from the Sale Order and avers that the Sale Order speaks for itself and is the best evidence of its contents, findings, and conclusions.

20.    Section VII.9 of the Sale Order broadly defines "Liens, Claims and Interests" as including, inter alia, "any and all charges, liens (statutory or otherwise), claims, mortgages, . . ., third-party interests, . . ., any and all equity or other interests of any kind or nature whatsoever in or with respect to . . . the Purchased Assets, including all the interests set forth in Paragraph W above." Exhibit D at 20.

**ANSWER TO PARAGRAPH 20:**

Ocean Point admits that Paragraph 20 contains an accurate partial quotation from the Sale Order, and avers that the Sale Order speaks for itself and is the best evidence of its contents, findings, and conclusions. To the extent Paragraph 20 states a legal conclusion as to the breadth of the quoted definition, no response is required. Otherwise, denied.

21.    "Paragraph W" of the Sale Order provides:

> As of the Closing, and pursuant and subject to the terms of the APA and Transaction Documents, the transfer of the Purchased Assets and the Sale will effect a legal, valid, enforceable, and effective transfer of the Purchased Assets and will vest the Purchaser – with Purchaser taking title in PHRT – with all of the Debtors' rights, title, and interests in the Purchased Assets *free and clear of all Liens, Claims, and Interests* (each as defined herein) of any kind or nature whatsoever (excluding the Operating Agreement Assumed Liabilities), *including, but not limited to*, (i) liens, mortgages, deeds of trust, pledges, charges, security interests, rights of first refusal, hypothecations, encumbrances, easements, servitudes, leases or subleases, rights-of-way, encroachments, restrictive covenants, *restrictions on transferability or other similar restrictions*, rights of offset or recoupment, *right of use or possession*, subleases, leases, *conditional sale arrangements, or other title retention arrangements*, other liens (including mechanic's, materialman's, possessory and other consensual and non-consensual liens and statutory liens), judgments, *charges of any kind or nature, if any,*

***including any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership***, . . . (iii) all debts, liabilities, obligations, ***contractual rights*** and claims, labor, employment and pension claims, and debts arising in any way in connection with any agreements, acts, or failures to act, in each case, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and ***whether imposed by agreement, understanding, law, equity or otherwise; . . ..***

Exhibit D at 10–12 (emphasis added).

## ANSWER TO PARAGRAPH 21:

Ocean Point admits that Paragraph 21 contains an accurate partial quotation from the Sale Order, with emphasis added, and further avers that the Sale Order speaks for itself and is the best evidence of its contents, findings, and conclusions.

22.    Port Hamilton completed the purchase of LBR's assets in accordance with the APA on January 19, 2022 and received a quitclaim deed from LBR for ***inter alia***, Refinery Plot 1-AB, and the Remainders of Refinery Plot Nos. 1, 2 and 3.

## ANSWER TO PARAGRAPH 22:

Ocean Point lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 22 of the FAC pertaining to Port Hamilton's completion of the purchase of LBR's assets in accordance with the APA, which is therefore denied.  Ocean Point admits that on January 19, 2022, a quitclaim deed was executed from LBR to Port Hamilton, and avers that the quitclaim deed speaks for itself and is the best evidence of its contents.

23.    The Sale Order expressly preserved all rights of access that LBR and Port Hamilton had with respect to easements and rights of access in accordance with "any other agreements between the Debtors [e.g., LBR] and the LBT entities [e.g., including Ocean Point]." Exh. D, Sale Order, ¶ 34.

**ANSWER TO PARAGRAPH 23:**

Ocean Point admits that ¶ 34 of the Sale Order contains the language partially quoted in Paragraph 23 of the FAC, and further avers that the Sale Order speaks for itself and is the best evidence of its contents, findings, and conclusions, including the rights of access that were preserved.  Paragraph 23 of the FAC, however, misleadingly omits language from ¶ 34 of the Sale Order which provides that "all rights, claims, and defenses of the LBT Entities, the Debtors, and the Purchaser (if any) under or with respect to any agreements benefitting or in favor of the LBT Entities, the Debtors, or the Purchaser (if any), respectively are expressly and fully reserved and preserved, including, without limitation, all easements and rights of use or access to the Debtors' property and ***property jointly owned by the Debtors and the LBT Entities***' property, including as set forth in the SSSA . . . ."  *See* Sale Order, ¶ 34 (emphasis added).  Otherwise, denied.

24.    By virtue of he [sic] Sale Order and easements, Port Hamilton has rights-of-use and rights-of-access that allow it and its invitees full access to its property across Ocean Point's property.

**ANSWER TO PARAGRAPH 24:**

Paragraph 24 of the FAC states legal conclusions to which no response is required.  To the extent a response is required, denied.

25.    Port Hamilton's rights-of-use and rights-of-access are not subject to Port Hamilton or its invitees when they exercise those rights across Ocean Point's property.

**ANSWER TO PARAGRAPH 25:**

Denied.

**OCEAN POINT'S CLAIM OF OWNERSHIP OF PORT HAMILTON ASSETS**

26.    Notwithstanding the Sale Order and APA, Ocean Point claims that it owns certain above-grade refinery assets (the "AGRA") located on the real property purchased by Port Hamilton under the APA.

**ANSWER TO PARAGRAPH 26:**

Ocean Point admits that it owns an undivided interest in certain above-grade refinery assets, and further admits that certain of such above-grade refinery assets are located on real property purchased by Port Hamilton under the APA.  Otherwise, denied.

Ocean Point further denies the heading above Paragraph 26.

27.    The basis for Ocean Point's claim of ownership of the AGRA is a January 4, 2016 bill of sale from Hovensa, L.L.C. ("Hovensa") (the former owner of the refinery) to Ocean Point ("the Hovensa-Ocean Point bill of sale["]).

**ANSWER TO PARAGRAPH 27:**

Ocean Point admits that the January 4, 2016 bill of sale and assignment and assumption agreement from HOVENSA, L.L.C. ("***Hovensa***") to Ocean Point (the "***Hovensa-Ocean Point Bill of Sale***") is one basis for Ocean Point's ownership in certain above-grade refinery assets. Otherwise, denied.

28.    A true copy of the Hovensa-Ocean Point bill of sale is attached as Exhibit G.

**ANSWER TO PARAGRAPH 28:**

Ocean Point clarifies that Exhibit G to the FAC does not include Schedule 1 to the Hovensa-Ocean Point Bill of Sale.  Otherwise, admitted.

29.    The Hovensa-Ocean Point bill of sale was neither witnessed nor notarized.

**ANSWER TO PARAGRAPH 29:**

Admitted, without suggesting that witnesses or notarization were required.

**DOCUMENTS OF RECORD WITH THE RECORDER OF DEEDS**

30.    On January 24, 2022, Port Hamilton recorded its deed for ***inter alia***, Refinery Plot 1-AB, and the Remainders of Refinery Plot Nos. 1, 2 and 3 with the Office of the Recorder of Deeds on St. Croix.  The deed was assigned Document No. 2022001204 by that office.

**ANSWER TO PARAGRAPH 30:**

Ocean Point admits that a deed with a Document No. 2022001204 was recorded on January 24, 2022, and avers that the deed speaks for itself and is the best evidence of its contents.

31.    The Hovensa-Ocean Point bill of sale was not recorded in the Virgin Islands Office of Recorder of Deeds.

**ANSWER TO PARAGRAPH 31:**

Admitted, without suggesting that recording was required.

32.    There was nothing in the chain of title for Refinery Plot 1-AB, and the Remainders of Refinery Plot Nos. 1, 2 and 3 that indicated that Ocean Point claimed any ownership interest in any of these plots or the improvements thereon.

**ANSWER TO PARAGRAPH 32:**

Denied.

33.    Ocean Point recorded a "Memorandum of Shared Services Agreement" ("the SSSA Memorandum") with the Recorder of Deeds on November 30, 2018.

**ANSWER TO PARAGRAPH 33:**

Ocean Point denies that the correct name of the document referred to in Paragraph 33 is "Memorandum of Shared Services Agreement."  Ocean Point instead admits that it and LBR entered into a Shared Services Systems Agreement (the "***SSSA***") dated as of November 30, 2018, along with a Memorandum of Shared Services Systems Agreement (the "***SSSA Memorandum***") entered into as of November 30, 2018, and further admits that the SSSA Memorandum was recorded with the Recorder of Deeds on November 30, 2018.

34.    A true copy of the SSSA Memorandum is attached as Complaint Exhibit H.

**ANSWER TO PARAGRAPH 34:**

Admitted, subject to the corrections in Ocean Point's answer to Paragraph 33 of the FAC.

35.    The SSSA Memorandum put the public on notice that Ocean Point and LBR had entered into a "Shared Services Systems Agreement," dated November 30, 2018 ("2018 SSSA") "pursuant to which the parties thereto have agreed (a) to share in certain costs and expenses of

development of the Ocean Point Shared Property and LBR Shared Property and otherwise to cooperate with one another in the development of the Shared Services Systems (as defined therein), all upon the terms and conditions set forth therein and (b) to provide certain limited services to the other parties with respect to the Ocean Point Shared Property and LBR Shared Property as specified therein."

**ANSWER TO PARAGRAPH 35:**

Ocean Point avers that the SSSA Memorandum speaks for itself and is the best evidence of its contents. To the extent Port Hamilton has imprecisely or selectively characterized, mischaracterized, or quoted the SSSA and/or the SSSA Memorandum, such elements of Paragraph 35 are denied. Among other things, the SSSA Memorandum provides that "[t]he covenants, terms, conditions and restrictions of the [SSSA] shall be binding upon, and inure to the benefit of the Parties thereto and shall continue as a servitude running with each of the Terminal Site (as defined therein) and Refinery Site (as defined therein). In the event of any conflict between the terns and provisions of [the SSSA] Memorandum and the terms and provisions of the [SSSA], the terms and provisions of the [SSSA] shall prevail. The terms and provisions of the [SSSA] are incorporated herein by this reference."

36.    In the SSSA Memorandum, Ocean Point represented that it owned an interest in the real property listed in Annex A to the SSSA Memorandum and that LBR owned an interest in the real property listed in Annex B to the SSSA Memorandum.

**ANSWER TO PARAGRAPH 36:**

Denied.

37.    In the SSSA Memorandum, Ocean Point made no claim that it owned any interest in LBR's property delineated in Annex B.

**ANSWER TO PARAGRAPH 37:**

Denied.

38.    The property listed in Annex B (owned at the time by LBR) included what is now known as Refinery Plot 1-AB, Remainders of Refinery Plot No. 1, Remainder of Refinery Plot No. 2 and Remainder of Refinery Plot No. 3.

**ANSWER TO PARAGRAPH 38:**

Ocean Point admits that the real property described on Annex B of the SSSA Memorandum includes real property that is now known as Refinery Plot 1-AB, Remainder of Refinery Plot No. 1, Remainder of Refinery Plot No. 2, and Remainder of Refinery Plot No. 3, which were conveyed by Project Navigator, Ltd. (as Environmental Response Trustee) to LBR via a quitclaim deed dated July 14, 2019 and recorded October 11, 2019. Ocean Point further avers that such deed speaks for itself, and is the best evidence of its contents. Otherwise, denied.

39.    Nothing in the SSSA Memorandum indicated that LBR had transferred any interest in the properties (including any interest in improvements thereon) listed in Annex B to Ocean Point.

**ANSWER TO PARAGRAPH 39:**

Denied.

40.    There was nothing in the SSSA Memorandum that suggested that Ocean Point had a claim of ownership to any portion of the structures and buildings located on the properties listed in Annex B.

**ANSWER TO PARAGRAPH 40:**

Denied.

41.    The actual 2018 SSSA identified in the SSSA Memorandum was not recorded with the Virgin Islands Recorder of Deeds and was not a public record.

**ANSWER TO PARAGRAPH 41:**

Subject to Ocean Point's answer to Paragraph 35 of the FAC, admitted.

**THE LBR BANKRUPTCY DATA ROOM**

42.    As part of its due diligence in deciding whether to purchase the LBR refinery assets, Port Hamilton had access to a virtual "Data Room" created by LBR that contained over 3,600 documents totaling approximately 5 gigabytes of data.

**ANSWER TO PARAGRAPH 42:**

Ocean Point lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 42 of the FAC, which therefore are denied. Ocean Point further lacks knowledge or information sufficient to form a belief about the truth of any allegations contained in the heading above Paragraph 42 of the FAC, which therefore are denied.

43. The Data Room included a copy of the Operating Agreement between LBR and the Government of the Virgin Islands. Section 6.4(B) of that Operating Agreement required (under certain circumstances) LBR to "undertake and complete the deconstruction of such parts of the above-grade Refinery as Refinery Operator determines, acting reasonably and in coordination with Terminal Operator, are unutilized and not necessary for the operation of the Terminal."

**ANSWER TO PARAGRAPH 43:**

Ocean Point lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in the first sentence of Paragraph 43 of the FAC related to the contents of a "Data Room," which therefore are denied. Ocean Point admits that the second sentence of Paragraph 43 contains an accurate partial quotation from the Operating Agreement between LBR and the Government of the Virgin Islands dated July 2, 2018 (the "*Operating Agreement*"), and avers that the Operating Agreement speaks for itself and is the best evidence of its contents.

44. The requirement that LBR deconstruct the above-grade Refinery is inconsistent with Ocean Point's claim that it owns the above-grade Refinery assets as LBR could not deconstruct them if it did not own them.

**ANSWER TO PARAGRAPH 44:**

Denied. Among other things, deconstruction under Section 6.4(B) of the Operating Agreement expressly required the Refinery Operator to "coordinat[e] with Terminal Operator [Ocean Point]" as to whether such parts of the above-grade Refinery to be deconstructed are "not necessary for the operation of the Terminal." In addition, Section 6.4(D) of the Operating Agreement states that "Refinery Operator and the Government hereby acknowledge that Terminal

Operator [Ocean Point] shall retain certain above-grade Shared Services Systems for the benefit of the Site."

45.     The Data Room included three identical copies of the 2018 SSSA, each consisting of 84 pages.

**ANSWER TO PARAGRAPH 45:**

Ocean Point lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 45 of the FAC, which therefore are denied.

46.     There were no other copies of the 2018 SSSA in the Data Room.

**ANSWER TO PARAGRAPH 46:**

Ocean Point lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 46 of the FAC, which therefore are denied.

47.     Each of these three copies of the 2018 SSSA indicated in Section 2.3 that the parties to the 2018 SSSA *planned* to transfer certain assets, or portions of certain assets, to the other via a bill of sale, that was said to be described in an Exhibit D to the 2018 SSSA.

**ANSWER TO PARAGRAPH 47:**

Denied.

48.     There was no copy of this bill of sale described in the 2018 SSSA in the Data Room.

**ANSWER TO PARAGRAPH 48:**

Ocean Point lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 48 of the FAC, which therefore are denied.

49.     Moreover, the bill of sale described in the 2018 SSSA was neither referenced in the SSSA Memorandum nor recorded with the Virgin Islands Recorder of Deeds.

**ANSWER TO PARAGRAPH 49:**

Ocean Point denies that the bill of sale was not referenced in the SSSA Memorandum, but admits, without suggesting that recording was required, that the bill of sale was not recorded in the Virgin Islands Office of Recorder of Deeds.  Otherwise, denied.

50.     The Data Room did not contain any evidence that Ocean Point owned any above-grade assets located on the properties listed in Annex B of the SSSA Memorandum.

**ANSWER TO PARAGRAPH 50:**

Ocean Point lacks knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 50 of the FAC, which therefore are denied.  For the avoidance of doubt, Ocean Point denies that Port Hamilton was unaware of the SSSA prior to the APA and Sale Order approved and entered by the U.S. Bankruptcy Court for the Southern District of Texas.

51.     On information and belief, Ocean Point relies upon a definition of "above-grade refinery assets" that was incorporated in an "Amended and Restated Asset Purchase Agreement" dated January 4, 2016 between Hovensa L.L.C. and Ocean Point ("2016 APA").

**ANSWER TO PARAGRAPH 51:**

Ocean Point admits that "Above-Grade Refinery Assets" is a defined term within the Amended and Restated Asset Purchase Agreement by and among HOVENSA L.L.C. ("***Hovensa***"), Ocean Point, and Limetree Bay Holdings, LLC dated January 4, 2016 (the "***2016 APA***"), and avers that the 2016 APA speaks for itself and is the best evidence of its contents. Ocean Point further avers that it acquired the Above-Grade Refinery Assets from Hovensa in accordance with, among other things, the 2016 APA.  Otherwise, denied.

52.     The 2016 APA was not recorded with the Recorder of Deeds in the Virgin Islands nor was it included in the Data Room.

**ANSWER TO PARAGRAPH 52:**

Ocean Point admits that the 2016 APA, although a public record in the Hovensa bankruptcy case, was not recorded with the Recorder of Deeds in the Virgin Islands, but further avers that the 2016 APA unambiguously was referenced in the relevant deeds recorded with the Recorder of Deeds in the Virgin Islands.  Ocean Point lacks knowledge or information sufficient to form a

belief about the truth of the remaining allegations contained in Paragraph 52 of the FAC related to the contents of the "Data Room," which therefore are denied.

53.    The 2016 APA defined "above-grade refinery assets" as:

> any and all refining process units, buildings, structures, fixtures or other improvements owned by Seller that are present on the Option Refinery Property or the Leased Submerged Lands that are exclusively at or above grade, including the power plant located on the Option Refinery Property, and all equipment, personal property and fixtures, including any and all ancillary and non-structural personal property, required to operate such assets (including below-grade pumps, storage tanks, piping, electrical service and distribution system, control systems and any other associated utility infrastructure); provided, that, for the avoidance of doubt, the Above-Grade Refinery Assets shall not include any Retained Refinery Assets or other Excluded Assets. Notwithstanding the foregoing, the Above-Grade Refinery Assets shall include the above-grade portion of the ground flare present on that certain parcel of real property identified in Exhibit H as an "Excluded" parcel and located within the submerged land border.

**ANSWER TO PARAGRAPH 53:**

Admitted, except that the term is capitalized in the 2016 APA.

54.    The above definition of AGRA lacks the required specificity to identify the property that is subject to the purported conveyance via the bill of sale.

**ANSWER TO PARAGRAPH 54:**

Paragraph 54 of the FAC states legal conclusions to which no response is required. To the extent a response is required, denied.

55.    On information and belief, Ocean Point's purpose in attempting to limit its ownership to assets that were "exclusively at or above-grade" was to enable it to own the assets without assuming liability for legacy environmental pollution that was associated with the land below the refinery.

**ANSWER TO PARAGRAPH 55:**

Paragraph 55 of the FAC states a legal conclusion to which no response is required.

56.    Much of what Ocean Point currently claims as owned by it under the definition of "AGRA" is not "exclusively at or above-grade."

**ANSWER TO PARAGRAPH 56:**

Denied.

57.    For example, Ocean Point claims to possess an undivided ownership interest in warehouses located on Port Hamilton's real property, yet these warehouses have foundations and are not "exclusively at or above-grade."

**ANSWER TO PARAGRAPH 57:**

Ocean Point admits it has an undivided ownership interest in warehouses located on Port Hamilton's real property and that such warehouses have foundations.  Otherwise, denied to the extent Port Hamilton alleges that foundations to buildings, structures, or equipment render them outside the definition of AGRA.  To the extent further response is required, denied.

58.    Further, the power plant is not "exclusively at or above-grade" and actually has a basement that is entirely below-grade.

**ANSWER TO PARAGRAPH 58:**

To the extent Port Hamilton alleges the power plant is not included in the 2016 APA's definition of Above Grade Refinery Assets, denied.  Otherwise, and without admitting that the following changes the power plant's classification as AGRA, Ocean Point admits that the power plant's basement is below grade.

59.    [The FAC does not contain a Paragraph 59 following Paragraph 58].

60.    Virtually every single building on Port Hamilton's real property over which Ocean Point asserts an ownership interest has foundations and other structural components that mean that they are not exclusively above grade.

**ANSWER TO PARAGRAPH 60:**

To the extent Port Hamilton alleges such buildings are not included in the 2016 APA's definition of Above Grade Refinery Assets, denied.  Otherwise, Ocean Point admits that such buildings have foundations.

## COUNT I – PORT HAMILTON OBTAINED TITLE IN GOOD FAITH
## AS AN INNOCENT PURCHASER OF THE REFINERY ASSETS

59.    [Misnumbered] When Port Hamilton decided to purchase the LBR Refinery assets out of the LBR bankruptcy proceeding, it relied upon information provided in the Data Room and the documents of record with the Recorder of Deeds.

**ANSWER TO PARAGRAPH 59:**

Ocean Point lacks knowledge or information sufficient to form a belief about the truth of

the allegations in Paragraph 59 of the FAC, which therefore are denied.

For the avoidance of doubt, Ocean Point denies the heading which immediately precedes

Paragraph 59 of the FAC.

60.    In accordance with 28 V.I.C. § 124, a conveyance of real property "which is not filed for record shall be void against any subsequent innocent purchaser in good faith and for a valuable consideration of the same real property, or any portion thereof, whose conveyance is first duly recorded."

**ANSWER TO PARAGRAPH 60:**

Ocean Point admits that Paragraph 60 of the FAC contains an accurate quotation of

28 V.I.C. § 124, but avers that 28 V.I.C. § 124 speaks for itself and is the best evidence of its

contents, in addition to stating a legal conclusion to which no response is required.

61.    The Virgin Islands is a "race-notice" jurisdiction.  28 V.I.C. § 124; ***Brodhurst v. Frazier***, 57 V.I. 365, 371 (2012).

**ANSWER TO PARAGRAPH 61:**

Paragraph 61 of the FAC states a legal conclusion to which no response is required.

62.    As alleged and described in this complaint Port Hamilton was an innocent purchaser in good faith of the real property, including all improvements thereon, of, ***inter alia***,

> ***Refinery Plot 1-AB***, (comprising 6.8818 U.S. acres) and
>
> ***Remainder of Refinery Plot No. 1*** (comprising 114.9456 U.S. acres), over portions of Estates Blessing and Hope, King and Queen Quarters, St. Croix, U.S. Virgin Islands as shown on OLG Drawing No. A9-l 40-C0 19, dated May 24, 2019;

> ***Remainder of Refinery Plot No. 2*** (comprising 26.5670 U.S. acres), over portions of Estates Blessing, Hope and Jerusalem, King and Queen Quarters, St. Croix, U.S. Virgin Islands as shown on OLG Drawing No. A9-142-C019, dated May 30, 2019; and

> ***Remainder of Refinery Plot No. 3*** (comprising 184.4305 U.S. acres), over portions of Estates Jerusalem, Figtree Hill and Castle Coakley Land, Queen Quarter, St. Croix, U.S. Virgin Islands as shown on OLG Drawing No. A9-141-C019, dated May 24, 2019.

**ANSWER TO PARAGRAPH 62:**

Paragraph 62 of the FAC states legal conclusions to which no response is required. To the extent a response is required, denied.

63. Port Hamilton took ownership of the properties described in Paragraph 15 free and clear of any claims of ownership by Ocean Point, regardless of any claim by Ocean Point for ownership of improvements on the real property or ownership of "above-grade refinery assets."

**ANSWER TO PARAGRAPH 63:**

Denied.

64. Port Hamilton is entitled to a judgment stating that it owns Refinery Plot 1-AB; Remainder of Refinery Plot No. 1; Remainder of Refinery Plot No. 2; Remainder of Refinery Plot No. 3 in fee simple, including all improvements thereon, free and clear of any claims of Ocean Point.

**ANSWER TO PARAGRAPH 64:**

Denied.

**COUNT II – OCEAN POINT NEVER OWNED THE ABOVE-GRADE REFINERY ASSETS –FAILURE OF CONVEYANCE**

65. Contrary to claims asserted by Ocean Point, it has never owned the AGRA.

**ANSWER TO PARAGRAPH 65:**

Denied.

For the avoidance of doubt, Ocean Point also denies the heading which immediately precedes Paragraph 65 of the FAC.

66.     The property that Ocean Point claims to own as AGRA consists almost exclusively of real property improvements such as buildings and improvements that are permanently affixed to the land owned by Port Hamilton.

**ANSWER TO PARAGRAPH 66:**

Ocean Point admits that it owns an undivided interest in certain AGRA and that certain AGRA consist of buildings and improvements.  Ocean Point denies, to the extent alleged, that all such buildings and improvements are located on property owned by Port Hamilton.  To the extent Paragraph 66 of the FAC purports to state a legal conclusion as to the characterization of the AGRA, no response is required.  To the extent a response is required, denied.

67.     As alleged in Paragraph 27 of this first amended complaint, Ocean Point's claim of ownership of the AGRA is based upon the Hovensa-Ocean Point bill of sale.

**ANSWER TO PARAGRAPH 67:**

Ocean Point admits that the Hovensa-Ocean Point Bill of Sale is one basis for its ownership of certain Above Grade Refinery Assets but denies it is the sole basis for Ocean Point's ownership of AGRA.  Otherwise, denied.

68.     As alleged in Paragraph 29 of this first amended complaint, the Hovensa-Ocean Point bill of sale was neither witnessed nor notarized.

**ANSWER TO PARAGRAPH 68:**

Admitted, without suggesting that witnesses or notarization were required.

69.     Because the claimed property consists of improvements to land, as a matter of law it is "real property" rather than personal property.

**ANSWER TO PARAGRAPH 69:**

Paragraph 69 of the FAC states a legal conclusion to which no response is required.  To the extent a response is required, denied.

70.     In order to pass title to real property, the document conveying such title must be witnessed by two witnesses and notarized.  28 V.I.C. § 241(a)(2).

**ANSWER TO PARAGRAPH 70:**

Ocean Point admits that Paragraph 70 of the FAC contains an accurate quotation of 28 V.I.C. § 241(a)(2), but avers that 28 V.I.C. § 241 speaks for itself and is the best evidence of its contents, in addition to stating a legal conclusion to which no response is required.

71.    A failure to follow the formalities of 28 V.I.C. § 241(a)(2) renders the document of conveyance "ineffective to pass title." *Alexander v. Alexander*, 65 V.I. 372, 381 (2016).

**ANSWER TO PARAGRAPH 71:**

Paragraph 71 of the FAC states a legal conclusion to which no response is required.

72.    Because the Hovensa-Ocean Point bill of sale did not comply with the formalities of 28 V.I.C. § 241(a)(2), Ocean Point never took title to the AGRA and when the bankruptcy court approved the sale of Refinery Plot 1-AB; Remainder of Refinery Plot No. 1; Remainder of Refinery Plot No. 2; and Remainder of Refinery Plot No. 3 free and clear of all interests while potentially reserving interests owned by Ocean Point, there were no Ocean Point ownership interests to preserve.

**ANSWER TO PARAGRAPH 72:**

Denied.

73.    Port Hamilton is entitled to a judgment stating that it owns Refinery Plot 1-AB; Remainder of Refinery Plot No. 1; Remainder of Refinery Plot No. 2; Remainder of Refinery Plot No. 3 in fee simple, including all improvements thereon (and specifically including the AGRA), free and clear of any claims of Ocean Point.

**ANSWER TO PARAGRAPH 73:**

Denied.

**COUNT III – IMPOSSIBILITY OF OCEAN POINT'S OWNERSHIP CLAIM**

74.    Ocean Point claims that by virtue of its alleged ownership of the AGRA, it co-owns undividable interests in various real property improvements on Port Hamilton's land, and specifically on Refinery Plot 1-AB; Remainder of Refinery Plot No. 1; Remainder of Refinery Plot No. 2; and/or Remainder of Refinery Plot No. 3.

**ANSWER TO PARAGRAPH 74:**

Ocean Point admits that it owns undivided interests in various property located on Port Hamilton's land, including on the referenced plots (or portions thereof), and that ownership of the

AGRA is one basis for Ocean Point's ownership.  To the extent Paragraph 74 of the FAC purports

to state a legal conclusion as to the characterization of such property as real property or personal

property, or to suggest that such characterization is determinative of the AGRA's current

ownership, no response is required.

For the avoidance of doubt, Ocean Point denies the heading which immediately precedes

Paragraph 74 of the FAC.

75.     Ocean Point has no ownership or other possessory interest in Refinery Plot 1-AB;
Remainder of Refinery Plot No. 1; Remainder of Refinery Plot No. 2; and/or Remainder of
Refinery Plot No. 3.

**ANSWER TO PARAGRAPH 75:**

Denied.  Among other things, Ocean Point has easements with respect to some or all of

such plots.

76.     Ocean Point's claim to ownership of real estate improvements (**e.g**., the AGRA)
separate and apart from the land is in the nature of a horizontal property regime.

**ANSWER TO PARAGRAPH 76:**

Paragraph 76 of the FAC states a legal conclusion to which no response is required.

77.     At common law, horizontal property regimes were unknown.  **Rouse v. Glascam
Builders, Inc.**, 101 Wash. 2d 127, 132, 677 P.2d 125, 128 (1984).

**ANSWER TO PARAGRAPH 77:**

Paragraph 77 of the FAC states a legal conclusion to which no response is required.

Otherwise, denied.

78.     Under Virgin Islands law, the Legislature has departed from the common law and
has authorized, by statute, horizontal property regimes that are created under the Virgin Islands
Condominium Act. 28 V.I.C. §§ 901, **et seq**.

**ANSWER TO PARAGRAPH 78:**

Paragraph 78 of the FAC states a legal conclusion to which no response is required.

79. In order to create a horizontal property regime under Virgin Islands law, the owner(s) of property to be subject to the regime must execute and record a master deed or lease, together with a declaration (commonly known as a "declaration of condominium") that complies with 28 V.I.C. § 910. *See* 28 V.I.C. § 902.

**ANSWER TO PARAGRAPH 79:**

Paragraph 79 of the FAC states a legal conclusion to which no response is required.

Otherwise, denied.

80. Refinery Plot 1-AB is not subject to a declaration of condominium created in accordance with 28 V.I.C. § 910.

**ANSWER TO PARAGRAPH 80:**

Paragraph 80 of the FAC states a legal conclusion to which no response is required.

Otherwise, denied.

81. Remainder of Refinery Plot No. 1 is not subject to a declaration of condominium created in accordance with 28 V.I.C. § 910.

**ANSWER TO PARAGRAPH 81:**

Paragraph 81 of the FAC states a legal conclusion to which no response is required.

Otherwise, denied.

82. Remainder of Refinery Plot No. 2 is not subject to a declaration of condominium created in accordance with 28 V.I.C. § 910.

**ANSWER TO PARAGRAPH 82:**

Paragraph 82 of the FAC states a legal conclusion to which no response is required.

Otherwise, denied.

83. Remainder of Refinery Plot No. 3 is not subject to a declaration of condominium created in accordance with 28 V.I.C. § 910.

**ANSWER TO PARAGRAPH 83:**

Paragraph 83 of the FAC states a legal conclusion to which no response is required.

Otherwise, denied.

84.    Because Refinery Plot 1-AB; Remainder of Refinery Plot No. 1; Remainder of Refinery Plot No. 2; and Remainder of Refinery Plot No. 3 are not subject to a declaration of condominium created in accordance with 28 V.I.C. § 910, the AGRA do not exist separate and apart from the land and it is impossible to own such AGRA without taking title to the land.

**ANSWER TO PARAGRAPH 84:**

Denied.

85.    Port Hamilton owns all improvements on Refinery Plot 1-AB; Remainder of Refinery Plot No. 1; Remainder of Refinery Plot No. 2; and Remainder of Refinery Plot No. 3 as part of its fee simple ownership of those plots.

**ANSWER TO PARAGRAPH 85:**

Denied.

86.    Port Hamilton is entitled to a judgment stating that it owns Refinery Plot 1-AB; Remainder of Refinery Plot No. 1; Remainder of Refinery Plot No. 2; Remainder of Refinery Plot No. 3 in fee simple, including all improvements thereon, free and clear of any claims of Ocean Point.

**ANSWER TO PARAGRAPH 86:**

Denied.

## COUNT IV – ILLEGAL DENIAL OF ACCESS

87.    Ocean Point has in the past illegally used its status as the provider of a federally-mandated Facility Security Plan ("FSP") to require Port Hamilton's contractors' employees to sign "Individual Access Agreements" (attached as Exhibit A to the original complaint in this matter) that require the employees to surrender substantial rights.

**ANSWER TO PARAGRAPH 87:**

Paragraph 87 of the FAC states a legal conclusion to which no response is required.  To the extent a response is required, Ocean Point denies that any agreement required prior to entry onto Ocean Point's property is illegal.  Ocean Point admits it has required, as a condition to accessing certain of Ocean Point's property, some of Port Hamilton's contractors' employees to sign Individual Access Agreements.

For the avoidance of doubt, Ocean Point denies the heading immediately preceding Paragraph 87 of the FAC.

88.    The security for the combined terminal/refinery facility is the subject of federal requirements because of the marine port (owned 100% by Ocean Point).

**ANSWER TO PARAGRAPH 88:**

Paragraph 88 of the FAC states a legal conclusion to which no response is required.  To the extent a response is required, Ocean Point denies that the terminal and refinery are subject to federal security requirements solely because of the marine port that Ocean Point owns.  Ocean Point admits that security for the refinery and terminal is the subject of federal requirements.  Ocean Point further admits that the marine port is 100% owned by Ocean Point.

89.    The refinery is located inside a security zone created in accordance with federal law to protect marine ports from terrorism.

**ANSWER TO PARAGRAPH 89:**

Paragraph 89 of the FAC states a legal conclusion to which no response is required.  To the extent a response is required, Ocean Point admits the allegations in Paragraph 89 of the FAC, except Ocean Point lacks knowledge sufficient to admit or deny the reasons for the creation of security zones under federal law.

90.    Under federal law, a marine port is required to have a Facility Security Plan ("FSP") that ensures "the application of security measures designed to protect the facility and its servicing vessels or those vessels interfacing with the facility, their cargoes, and persons on board." 33 C.F.R. § 101.105 (definitions).

**ANSWER TO PARAGRAPH 90:**

Paragraph 90 of the FAC states a legal conclusion to which no response is required.  To the extent a response is required, Ocean Point denies that the FSP requirement applies only to "marine ports" and admits that Paragraph 90 of the FAC contains an accurate quotation of 33 C.F.R. § 101.105, and avers that the rule speaks for itself and is the best evidence of its contents.

91.    Ocean Point's marine terminal is subject to this requirement.

**ANSWER TO PARAGRAPH 91:**

Paragraph 91 of the FAC states a legal conclusion to which no response is required. To the extent a response is required, admitted.

92.    The FSP for the terminal was originally developed by HOVENSA and then taken over, and modified, by Ocean Point before Ocean Point separated the terminal and refinery into separate entities.

**ANSWER TO PARAGRAPH 92:**

To the extent alleged or implied in Paragraph 92 of the FAC, Ocean Point denies that it formed or was the corporate parent of LBR. Ocean Point admits that Hovensa originally developed the FSP for the terminal, and further admits that Ocean Point took over the administration of the FSP and has modified it at various times, in accordance with applicable law. Ocean Point further admits that Ocean Point transferred certain assets to LBR.

93.    Ocean Point's FSP continues to apply to both the terminal and the refinery even though they are no longer owned by related entities.

**ANSWER TO PARAGRAPH 93:**

Admitted.

94.    Any changes to the FSP must be approved by the U.S. Coast Guard.

**ANSWER TO PARAGRAPH 94:**

Paragraph 94 of the FAC states a legal conclusion to which no response is required. To the extent a response is required, Ocean Point admits the allegations in Paragraph 94 of the FAC.

95.    Under the existing FSP, Ocean Point controls ***all*** access to both the refinery and the terminal.

**ANSWER TO PARAGRAPH 95:**

Admitted.

96.    The FSP was not modified after Ocean Point spun off the refinery to LBR.

**ANSWER TO PARAGRAPH 96:**

Denied.

97.     Part of Ocean Point's duties under the FSP include controlling access to the facility.

**ANSWER TO PARAGRAPH 97:**

Admitted.

98.     The purpose of these controls is to ensure that only personnel who have passed federal background investigations may enter the facility.

**ANSWER TO PARAGRAPH 98:**

Denied.

99.     Authorized personnel under the FSP include individuals who have Transportation Worker Identification Credential cards ("TWIC").

**ANSWER TO PARAGRAPH 99:**

To the extent that Plaintiff alleges that possession of a TWIC card automatically authorizes

an individual to access the Terminal and Refinery under the FSP, denied.  Otherwise, admitted.

100.     People holding TWIC cards have passed a background check conducted by the U.S. Transportation Security Administration.

**ANSWER TO PARAGRAPH 100:**

Admitted.

101.     The normal process for Port Hamilton employees and contractors to obtain access to the refinery under the FSP is to provide Ocean Point with basic information that allows Ocean Point to confirm that they possess TWIC cards and then Ocean Point issues a security badge that allows the individuals to enter the facility and proceed to the refinery location where they will be working.

**ANSWER TO PARAGRAPH 101:**

Denied, except that Ocean Point admits that providing information sufficient to determine

whether an individual possesses a TWIC card is one requirement to obtain access under the FSP.

102.     Ocean Point's role is administrative only—simply making sure that the individual meets federal requirements.

**ANSWER TO PARAGRAPH 102:**

Denied.

103.    The security badges issued by Ocean Point expire on the 31st of every December and must be renewed annually before then to allow access on January 1 of the following year.

**ANSWER TO PARAGRAPH 103:**

Admitted.

104.    In the past, Ocean Point has refused, or threatened to refuse, to grant Port Hamilton's contractors the requisite security badges even though they meet all requirements under the FSP to be granted access.

**ANSWER TO PARAGRAPH 104:**

Denied.

105.    Ocean Point has used its access control under the FSP for improper purposes in the past by leveraging that control to coerce Port Hamilton's contractors' employees to sign the "Individual Access Agreements."

**ANSWER TO PARAGRAPH 105:**

Denied.

106.    These one-sided contracts of adhesion require the contractors' employees to agree that Ocean Point owes the employees no duty and to waive any claim against Ocean Point unless the only reason for the claim is solely Ocean Point's gross negligence.

**ANSWER TO PARAGRAPH 106:**

Denied, except that Ocean Point admits the Individual Access Agreements contain a provision in which the entrant agrees to release and hold harmless Ocean Point, "except if caused by the sole gross negligence of the Company."  Ocean Point further avers that each Individual Access Agreement speaks for itself and is the best evidence of its contents.

107.    The agreements also require the contractor employees to sign arbitration agreements and waive the right to a jury trial.

**ANSWER TO PARAGRAPH 107:**

Ocean Point admits that the Individual Access Agreements contain provisions relating to arbitration and waiver of the right to a jury trial. Ocean Point further avers that each Individual Access Agreement speaks for itself and is the best evidence of its contents.

108.    These contractor employees are not performing any work on behalf of Ocean Point and are relying upon Port Hamilton's right-of-access to enter the facility to access Port Hamilton's assets.

**ANSWER TO PARAGRAPH 108:**

Denied.

109.    When accessing the refinery facility through the currently manned security gates, individuals travel upon roads that are owned by Ocean Point.

**ANSWER TO PARAGRAPH 109:**

Ocean Point admits that at times individuals have traveled on roads that are owned by Ocean Point to access the refinery facility and that portions of the refinery facility can be reached by roads that are owned by Ocean Point. To the extent alleged or implied in Paragraph 109 of the FAC that Port Hamilton must use Ocean Point's roads to generally reach the refinery facility, Ocean Point denies such allegations in Paragraph 109.

110.    Port Hamilton and its invitees have a right of access across those roads (with no requirement of waiving rights against Ocean Point) by virtue of easements, right-of-use agreements and the order of the bankruptcy court that oversaw The LBR Bankruptcy Case.

**ANSWER TO PARAGRAPH 110:**

Paragraph 110 of the FAC states a legal conclusion to which no response is required. To the extent a response is required, Ocean Point admits that the Sale Order provides that:

> Notwithstanding anything to the contrary in this Order, the APA or any applicable transition services agreement, all rights, claims, and defenses of the LBT Entities, the Debtors, and the Purchaser (if any) under or with respect to any agreements benefitting or in favor of the LBT Entities, the Debtors, or the Purchaser (if any), respectively are expressly and fully reserved and preserved, including, without limitation, all easements and rights of use or access to the Debtors' property and

property jointly owned by the Debtors and the LBT Entities' property, including as set forth in the SSSA, and, for the avoidance of doubt, the LBT Entities and Purchaser may continue to use and benefit from all such easements and rights of use or access after Closing in accordance with the SSSA or any other agreements between the Debtors and the LBT Entities.

Sale Order ¶ 34. Otherwise, denied.

111.    Ocean Point has no legal basis to demand that Port Hamilton's invitees waive their rights.

**ANSWER TO PARAGRAPH 111:**

Paragraph 111 of the FAC states a legal conclusion to which no response is required. To

the extent a response is required, denied.

112.    The sole means that Ocean Point has to enforce its demand that the contractor employees waive their rights is its status as the administrator of the FSP; however, the waiver of rights is not a federal requirement under the FSP and contributes nothing to the security of the facility.

**ANSWER TO PARAGRAPH 112:**

Denied.

113.    In the past, Ocean Point has stated that if the employees do not sign this agreement, Ocean Point will deny them access to the refinery.

**ANSWER TO PARAGRAPH 113:**

Denied.

114.    If employees are unable to enter the refinery, severe damage to the refinery, terminal, personnel and the environment will result.

**ANSWER TO PARAGRAPH 114:**

Ocean Point lacks knowledge or information sufficient to form a belief about the truth of

the allegations in Paragraph 114 of the FAC, which therefore are denied.

115.    Further, in the near future, Port Hamilton anticipates a need for a number of contractors and hundreds of contractor employees to be able to access the refinery to address ongoing projects related to restarting the refinery.

**ANSWER TO PARAGRAPH 115:**

Ocean Point lacks knowledge or information sufficient to form a belief about the truth of

the allegations in Paragraph 115 of the FAC, which therefore are denied.

116.    Ocean Point has no legal basis for imposing, or right to impose, any conditions
upon the entry of Port Hamilton's business invitees to the refinery except for those conditions that
are required by federal law for the implementation of the FSP.

**ANSWER TO PARAGRAPH 116:**

Paragraph 116 of the FAC states a legal conclusion to which no response is required.  To

the extent a response is required, Ocean Point denies the allegations in Paragraph 116 of the FAC.

117.    Ocean Point's implementation of unauthorized and illegal restrictions upon the
right of Port Hamilton's business invitees to enter the refinery, if not restrained, will endanger Port
Hamilton, Ocean Point, and the entire community and cause immeasurable damage to Port
Hamilton.

**ANSWER TO PARAGRAPH 117:**

Denied.

118.    Port Hamilton has an absolute right to access its property even though doing so
requires its employees and contractor employees to cross Ocean Point property to do so.

**ANSWER TO PARAGRAPH 118:**

Denied.

119.    Ocean Point has no right to prevent Port Hamilton or its contractors from accessing
Port Hamilton's property, even though a portion of the access is over Ocean Point property, as
long as those individuals meet the security' [sic] requirements of the federal government.

**ANSWER TO PARAGRAPH 119:**

Denied.

120.    If Ocean Point denies Port Hamilton's or its contractor' [sic] employees access to
the refinery, numerous essential responsibilities will go unfulfilled, including, without limitation:

a.    Maintain surveillance of all refinery process units to ensure that there are no leaks
or releases and to immediately respond if a leak or release develops;

b.      Keep the refinery in compliance with requirements of the U.S. Environmental Protection Agency, the Virgin Islands Department of Planning and Natural Resources, the Occupational Safety and Health Administration and the Virgin Islands Department of Labor;

c.      Respond to any fire, release, or oil spill;

d.      Maintain the air pollution monitors along the facility fence line;

e.      Keep the petroleum coke stored in the coke domes wet so that they do not combust;

f.      Maintain all out-of-service process units and flare units in a "nitrogen purge condition" so that the atmosphere in such units is kept in a non-explosive condition;

g.      Maintain the Continuous Emission Monitoring System for the flare;

h.      Provide proper manning for the fire and rescue teams to ensure a prompt response to any emergency;

i.      Generally maintain the refinery in a safe, healthy, and environmentally appropriate manner;

j.      conduct the work necessary to safely restart the refinery.

**ANSWER TO PARAGRAPH 120:**

Ocean Point lacks knowledge or information sufficient to form a belief about the truth of

the allegations in Paragraph 120 of the FAC, which therefore are denied.

121.    If the personnel cannot perform their duties as outlined above, there is a substantial likelihood that there will be damage to Port Hamilton's equipment; unauthorized releases of regulated pollutants to the atmosphere; the potential for catastrophic damage from explosion with resulting personal injuries, property damage; and widespread environmental damage; and the refinery might never restart.

**ANSWER TO PARAGRAPH 121:**

Ocean Point lacks knowledge or information sufficient to form a belief about the truth of

the allegations in Paragraph 121 of the FAC, which therefore are denied.

122.    Ocean Point's terminal facility is downwind (based upon prevailing winds) from the refinery.  Consequently, Ocean Point will place itself at risk by refusing Port Hamilton's contractors' employees access to the facility.

**ANSWER TO PARAGRAPH 122:**

Denied.

123.    These same contractor employees presently have access through the same means and have had such access *without signing away their rights* for the past two years.

**ANSWER TO PARAGRAPH 123:**

Denied.

124.    Ocean Point's ability to meet the security requirements of the FSP will not be affected by an injunction that allows Ocean Point to restrict access to individuals who do not meet federal security requirements and merely prohibits Ocean Point from using its status as the administrator of the FSP from leveraging that status to secure protections for itself that are unrelated to protecting the port from terrorism.

**ANSWER TO PARAGRAPH 124:**

Denied.

125.    It is against the public policy of the Virgin Islands to put contractors' employees in a position where they are required to sign away rights such as demanded by Ocean Point when Ocean Point offers them absolutely no consideration in return.

**ANSWER TO PARAGRAPH 125:**

Paragraph 125 of the FAC states a legal conclusion to which no response is required.  To

the extent a response is required, denied.

**COUNT V – CONVERSION AND TRESPASS**

126.    Conversion occurs when a party with the right to possession of a chattel has its right to control the chattel violated by someone who intentionally and improperly exercises dominion or control over the chattel, seriously interfering with the other's right to control the chattel.

**ANSWER TO PARAGRAPH 126:**

Paragraph 126 of the FAC states a legal conclusion to which no response is required.  To

the extent a response is required, Ocean Point denies the allegations in Paragraph 126 of the FAC.

For the avoidance of doubt, Ocean Point denies the heading immediately preceding

Paragraph 126 of the FAC.

127.    Trespass occurs when a party enters the land of another without consent.

**ANSWER TO PARAGRAPH 127:**

Paragraph 127 of the FAC states a legal conclusion to which no response is required.  To the extent a response is required, Ocean Point denies the allegations in Paragraph 127 of the FAC.

128.    Port Hamilton has a right of possession and control over the real estate improvements that Ocean Point has defined as "AGRA," including, without limitation, the power house and all equipment within same, all gas turbines on the properties identified in paragraph 14 of this complaint, the wastewater treatment plant, the fire house, several warehouses and maintenance buildings, including the main warehouse, the laundry used for the normal washing of bunker gear, as well as various other chattels, such as its fire fighting equipment.

**ANSWER TO PARAGRAPH 128:**

Ocean Point admits that Port Hamilton has, among other things, a right of possession and control over certain improvements and/or structures defined as "Above Grade Refinery Assets" in the 2016 APA, which LBR obtained in accordance with the SSSA and its associated Bill of Sale, and thereafter sold to Port Hamilton under the APA and Sale Order approved by the U.S. Bankruptcy Court for the Southern District of Texas.  Ocean Point further avers that, through all of these steps, Ocean Point retained (and still retains) its own undivided ownership interest in most or all of the improvements and/or structures defined as "Above Grade Refinery Assets" in the 2016 APA.  To the extent Paragraph 128 of the FAC purports to state a legal conclusion as to the characterization of the AGRA, no response is required.  To the extent Paragraph 128 of the FAC alleges that Port Hamilton's right of possession and control is exclusive of Ocean Point's undivided ownership interest in AGRA and/or Shared Services Systems contrary to the 2016 APA, the SSSA and its associated Bill of Sale, or the Sale Order, Ocean Point denies such allegations in Paragraph 128 of the FAC.

129.    Ocean Point has taken it upon itself, using its control via the Facility Security Plan, to use and operate equipment, and entire buildings, owned exclusively by Port Hamilton without Port Hamilton's consent.  This has included going so far as to prevent Port Hamilton from

removing the laundry equipment **that Port Hamilton owns** from the building (also owned by Port Hamilton) so that Port Hamilton could use it in an [sic] a different area.

### ANSWER TO PARAGRAPH 129:

Denied.

130.    Ocean Point has exercised total dominion over the equipment and buildings, including, without limitation, the power plant, Port Hamilton's fire house, several warehouses, the laundry used for the normal washing of bunker gear, as well as various other chattels, such as its fire fighting equipment.

### ANSWER TO PARAGRAPH 130:

Denied.

131.    Ocean Point has also removed a security turnstile owned by Port Hamilton from Port Hamilton's property and moved it onto Ocean Point's property and placed it in service without permission or authorization from Port Hamilton.

### ANSWER TO PARAGRAPH 131:

Denied.

132.    Ocean Point has also denied Port Hamilton access to the equipment and buildings Port Hamilton owns.

### ANSWER TO PARAGRAPH 132:

Denied.

133.    Ocean Point's exercise of dominion over Port Hamilton's equipment and buildings has seriously interfered with Port Hamilton's right to control its own property, including preventing Port Hamilton from maintaining its own property.

### ANSWER TO PARAGRAPH 133:

Denied.

134.    Ocean Point's exercise of dominion has included modifying equipment and property owned by Port Hamilton without Port Hamilton's permission and to Port Hamilton's detriment.

### ANSWER TO PARAGRAPH 134:

Denied.

135.    To the extent the Port Hamilton equipment and property wrongfully controlled by Ocean Point is personal property, Ocean Point has converted it.  To the extent that the equipment and property is real property, Ocean Point has trespassed upon it.

**ANSWER TO PARAGRAPH 135:**

Paragraph 135 of the FAC states a legal conclusion to which no response is required.  To the extent a response is required, Ocean Point denies the allegations in Paragraph 135 of the FAC.

136.    Port Hamilton is entitled to a judgment directing Ocean Point to cease exercising dominion over Port Hamilton's property as identified in this first amended complaint and for the damages it has sustained as a result of Ocean Point's wrongful exercise of dominion over, and trespass upon, Port Hamilton's property.

**ANSWER TO PARAGRAPH 136:**

Denied.

## COUNT VI – CONSTRUCTIVE BAILMENT

137.    Ocean Point's exercise of total control and dominion over Port Hamilton's property and equipment created a constructive bailment.

**ANSWER TO PARAGRAPH 137:**

Paragraph 137 of the FAC states a legal conclusion to which no response is required.  To the extent a response is required, Ocean Point denies the allegations in Paragraph 137 of the FAC.

For the avoidance of doubt, Ocean Point denies the heading immediately preceding Paragraph 137 of the FAC.

138.    As a bailee, Ocean Point has a duty to care for the property over which it is exercising dominion and control and to return the property to Port Hamilton in the same condition as when it first took custody over it.

**ANSWER TO PARAGRAPH 138:**

Paragraph 138 of the FAC states a legal conclusion to which no response is required.  To the extent a response is required, Ocean Point denies the allegations in Paragraph 138 of the FAC.

139.    Ocean Point has breached its duty to properly care for the property and equipment belonging to Port Hamilton by, ***inter alia***, (a) failing to maintain it; (b) using it and thereby decreasing its useful life; (c) modifying it; and (d) denying Port Hamilton access to care for it.

**ANSWER TO PARAGRAPH 139:**

Paragraph 139 of the FAC states a legal conclusion to which no response is required.  To

the extent a response is required, Ocean Point denies the allegations in Paragraph 138 of the FAC.

140.     Port Hamilton is entitled to a judgment against Ocean Point compensating Port
Hamilton for all damage caused to the equipment and the reduction in value of same.

**ANSWER TO PARAGRAPH 140:**

Denied.

## COUNT VII – ENJOINING FUTURE MODIFICATIONS TO
## PORT HAMILTON'S PROPERTY

141.     Ocean Point is currently working on a "grid separation" project to separate its
electrical system from Port Hamilton's system.

**ANSWER TO PARAGRAPH 141:**

Ocean Point admits it is currently working on a grid separation project.  Ocean Port denies

that the primary purpose of such project is to separate its interest in the electrical system from Port

Hamilton's interest in such system.

142.     This grid separation project will require modifications to Port Hamilton's power
grid equipment (that Ocean Point presently is prohibiting Port Hamilton from accessing).

**ANSWER TO PARAGRAPH 142:**

Denied.

143.     The modifications could jeopardize Port Hamilton's power grid and thereby affect
Port Hamilton's operating equipment and Port Hamilton's ability to protect the refinery, personnel,
residents, and the environment.

**ANSWER TO PARAGRAPH 143:**

Denied.

144.     Ocean Point will not even share its plans for its grid separation project despite the
potential harm to Port Hamilton.

**ANSWER TO PARAGRAPH 144:**

Denied, so long as Port Hamilton has a good-faith basis for the specific information requested, and so long as providing such information is not prejudicial to Ocean Point's interests.

145.    Port Hamilton is entitled to a permanent injunction prohibiting Ocean Point from conducting any modifications (a) on Port Hamilton's property, (b) to Port Hamilton's equipment, or (c) installing above ground poles or wires on Port Hamilton's property.

**ANSWER TO PARAGRAPH 145:**

Denied.

**RELIEF REQUESTED**

146.    Port Hamilton demands judgment against Ocean Point quieting title and affirmatively declaring that neither Ocean Point nor any other person or entity claiming an interest in the improvements, structures, appurtenances or interests on Refinery Plot 1-AB; Remainder of Refinery Plot No. 1; Remainder of Refinery Plot No. 2; and Remainder of Refinery Plot No. 3 possesses such an interest and that all such improvements, structures, appurtenances or interests are solely owned by Port Hamilton.

**ANSWER TO PARAGRAPH 146:**

Ocean Point denies that Port Hamilton is entitled to any of the relief requested in the FAC, including the relief sought in Paragraph 146 of the FAC.

147.    Port Hamilton demands judgment against Ocean Point ordering it to cease denying Port Hamilton access and use of the improvements, structures, appurtenances or interests situated on Refinery Plot 1-AB; Remainder of Refinery Plot No. 1; Remainder of Refinery Plot No. 2; and/or Remainder of Refinery Plot No. 3 except to the extent, and only to the extent, such denial is mandated by federal security concerns.

**ANSWER TO PARAGRAPH 147:**

Ocean Point denies that Port Hamilton is entitled to any of the relief requested in the FAC, including the relief sought in Paragraph 147 of the FAC.

148.    Port Hamilton demands judgment against Ocean Point for all damages it has incurred as a result of Ocean Point's improper assertion of ownership over Port Hamilton's property.

**ANSWER TO PARAGRAPH 148:**

Ocean Point denies that Port Hamilton is entitled to any of the relief requested in the FAC,

including the relief sought in Paragraph 148 of the FAC.

149.    Port Hamilton is entitled to a permanent injunction that prohibits Ocean Point from denying access to Port Hamilton's invitees if the basis for such denial is any reason other than failure to meet federal security requirements.

**ANSWER TO PARAGRAPH 149:**

Ocean Point denies that Port Hamilton is entitled to any of the relief requested in the FAC,

including the relief sought in Paragraph 149 of the FAC.

150.    Port Hamilton is entitled to a permanent injunction prohibiting Ocean Point from interfering with Port Hamilton's use and enjoyment of Port Hamilton's property.

**ANSWER TO PARAGRAPH 150:**

Ocean Point denies that Port Hamilton is entitled to any of the relief requested in the FAC,

including the relief sought in Paragraph 150 of the FAC.

151.    Port Hamilton is entitled to a permanent injunction prohibiting Ocean Point from conducting any modifications (a) on Port Hamilton's property, (b) to Port Hamilton's equipment, or (c) installing above ground poles or wires on Port Hamilton's property.

**ANSWER TO PARAGRAPH 151:**

Ocean Point denies that Port Hamilton is entitled to any of the relief requested in the FAC,

including the relief sought in Paragraph 151 of the FAC.

152.    Port Hamilton is entitled to a judgment awarding it its damages as alleged in this first amended complaint and as proven at trial in this matter.

**ANSWER TO PARAGRAPH 152:**

Ocean Point denies that Port Hamilton is entitled to any of the relief requested in the FAC,

including the relief sought in Paragraph 152 of the FAC.

153.    The acts of Ocean Point are outrageous and have threatened the lives of personnel and endangered the environment such that punitive damages should be assessed against Ocean Point and awarded to Port Hamilton.

**ANSWER TO PARAGRAPH 153:**

Ocean Point denies that Port Hamilton is entitled to any of the relief requested in the FAC, including the relief sought in Paragraph 153 of the FAC.

## AFFIRMATIVE AND OTHER DEFENSES

Without assuming any burden not otherwise imposed by applicable law, Ocean Point asserts the following defenses to the claims alleged in the FAC:

1. Port Hamilton's claims are barred because the FAC fails to state any claims upon which relief can be granted.

2. Port Hamilton's claims are barred, in whole or in part, by the Sale Order, the APA (and related agreements and instruments), and/or other orders entered by the United States Bankruptcy Court for the Southern District of Texas.

3. Port Hamilton's claims are barred, in whole or in part, by the Hovensa Sale Order, *see In re HOVENSA, L.L.C.*, No. 1:15-BK-10003-MFW (Bankr. D.V.I. Dec. 1, 2015) [Dkt. No. 394], the 2016 APA (and related agreements and instruments), and/or other orders entered by the Bankruptcy Division of the District Court of the Virgin Islands.

4. Port Hamilton's claims are barred, in whole or in part, under the doctrine of laches.

5. Port Hamilton's claims are barred, in whole or in part, by applicable statutes of limitations and/or repose.

6. Port Hamilton's claims are barred, in whole or in part, by a failure to mitigate damages.

7. Port Hamilton's claims are barred, in whole or in part, under the doctrine of unclean hands.

8. Port Hamilton's claims are barred, in whole or in part, by estoppel.

9. Port Hamilton's claims are barred, in whole or in part, because of the doctrine of *forum non conveniens*.

10. Port Hamilton's claims are barred, in whole or in part, by the doctrine of *res judicata*.

11. Port Hamilton's claims are barred, in whole or in part, by the doctrine of collateral estoppel.

12. Ocean Point reserves the right to raise additional defenses and to supplement those asserted herein, including but not limited to doing so as additional facts and information become available in discovery.

## COUNTERCLAIM

Ocean Point asserts the following Counterclaim against Port Hamilton and would show the Court as follows:

## COUNT I
## (Breach of Contract)

1.      Ocean Point incorporates by reference its responses to Paragraphs 1–153 of the FAC.

2.      The APA is a valid, enforceable contract.

3.      Port Hamilton is a party to the APA.

4.      To the extent necessary, Ocean Point is a third-party beneficiary of the APA.

5.      Alternatively, even if the Court concludes that Ocean Point is not a third-party beneficiary of the APA, Ocean Point may still enforce the forum-selection clause in the APA under the intertwined-claims doctrine, equitable estoppel, and other applicable law allowing non-signatories to enforce forum-selection clauses.

6.      Port Hamilton is defined as a "Purchaser" under the APA.

7.      As used in the APA, the "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Texas.

8.      Section 11.9 of the APA provides that:

Purchaser and Sellers agree that the Bankruptcy Court shall retain sole jurisdiction over any legal action or proceeding with respect to this Agreement. Each of Purchaser and Sellers irrevocably waives any objection, including any objection to the laying of venue or based on the grounds of *forum non conveniens,* which it may now or hereafter have to the bringing of any action or proceeding in such jurisdiction in respect of this Agreement or the transactions contemplated hereby. Purchaser and Sellers consent to the jurisdiction and authority of the Bankruptcy Court, including, without limitation, to the entry of final orders, decrees and judgments with respect to any matters arising under or relating to this Agreement or the transaction(s) contemplated hereby.

9.      Port Hamilton's claims in its FAC are "with respect to" the APA and therefore had to be brought in the United States Bankruptcy Court for the Southern District of Texas, which Port Hamilton agreed would retain sole jurisdiction over proceedings such as this one.

10.     Port Hamilton breached Section 11.9 of the APA by filing the FAC in the Superior Court of the Virgin Islands, Division of St. Croix.

11.     Ocean Point has been damaged by Port Hamilton's breach of contract because, among other things, Ocean Point has incurred attorneys' fees, costs, and expenses in connection with removing this proceeding to federal court, opposing Port Hamilton's motion for remand, and moving to transfer this proceeding to the United States Bankruptcy Court for the Southern District of Texas.

12.     In addition to such damages, Ocean Point is entitled to recover attorneys' fees for this breach of contract claim in accordance with Tex. Civ. Prac. & Rem. Code § 38.001 and other applicable law.  *See* APA § 11.8 ("This Agreement shall be governed and controlled as to validity, enforcement, interpretation, construction, effect and in all other respects by the internal laws of the State of Texas applicable to contracts made in that state and the applicable provisions of the Bankruptcy Code, without giving effect to any choice of law or conflict of law provision or rule that would cause the application of laws of any other jurisdiction.").[4]

---

[4] Subject to its Motion to Transfer Venue [Dkt. No. 2], Ocean Point files this Original Counterclaim solely to comply with the deadline to amend its Answer by May 10, 2024 without seeking leave or agreement of Port Hamilton.  *See* Fed. R. Civ. P. 15(a)(1)(A).  Ocean Point continues to respectfully urge this Court to transfer this action to the United States Bankruptcy Court for the Southern District of Texas, and does not expressly or impliedly limit the damages it claims for Port Hamilton's breach of contract to just those damages it has suffered as of this date.

## **CONCLUSION**

WHEREFORE, Ocean Point prays for judgment dismissing Port Hamilton's claims with prejudice and respectfully asks the Court to enter an order:

1. Awarding Ocean Point money damages in the amount equal to Ocean Point's reasonable costs and expenses, including attorneys' fees, incurred in removing this ~~case and addressing~~proceeding to federal court, opposing Port Hamilton's ~~FAC~~motion for remand, and moving to transfer this proceeding to the United States Bankruptcy Court for the Southern District of Texas;

2. Awarding Ocean Point all costs and expenses associated with this case, including reasonable attorneys' fees, in accordance with the APA, Tex. Civ. Prac. & Rem. Code § 38.001, and other applicable law;

3. Denying Port Hamilton any relief on any of its purported claims; and

4. Awarding Ocean Point such other relief as the Court deems appropriate.

Respectfully submitted,

**REED SMITH LLP**


Dated: ~~April 19~~May 10, 2024          By:    _/s/ Mark W. Eckard_____

Mark W. Eckard (1051)
1201 N. Market Street, Suite 1500
Wilmington, DE  19801
Telephone:  (302) 778-7546
Facsimile:  (302) 778-7575
Email:  MEckard@ReedSmith.com

Counsel to Limetree Bay Terminals, LLC _d/b/a_
Ocean Point Terminals

| Summary report: Litera Compare for Word 11.7.0.54 Document comparison done on 5/10/2024 4:02:24 PM | |
|---|---|
| **Style name:** VE Deletions Strikethru Full Text | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** nd://4881-6248-8229/17/2024-04-19 Ocean Point Answer to First Amended Complaint.docx | |
| **Modified filename:** 2024-05-10 Ocean Point First Amended Answer.docx | |
| **Changes:** | |
| Add | 50 |
| Delete | 9 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 59 |