DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| PORT HAMILTON REFINING & TRANSPORTATION, LLLP, | § § § § |
| Plaintiff/Counter-Defendant, | § § |
| vs. | § § Case No. 1:24-cv-00004 |
| LIMETREE BAY TERMINALS, LLC *d/b/a* OCEAN POINT TERMINALS, *et al.*, | § § § § § |
| Defendant/Counter-Plaintiff. | § § |

**OCEAN POINT'S OPPOSITION TO**
**PORT HAMILTON'S MOTION TO DISMISS COUNTERCLAIM**

Port Hamilton improperly filed this case in the wrong court. In doing so, Port Hamilton breached the mandatory forum-selection clause in the APA.[1] Ocean Point's Counterclaim[2] seeks redress for the damages caused by that breach.

Port Hamilton's Motion to Dismiss should be denied; the Counterclaim satisfies federal pleading standards. Alternatively, the Court should allow Ocean Point to amend its Counterclaim.

**I.    LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a "detailed pleading is not generally required." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). All that is needed is "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell*

---

[1] "***APA***" means the Asset Purchase Agreement attached as Exhibit E to Port Hamilton's First Amended Complaint, available at Docket No.1-2, ECF p. 6.

[2] "***Counterclaim***" means the counterclaim asserted in *Ocean Point's First Amended Answer to Plaintiff/Counter-Defendant's First Amended Complaint and Ocean Point's Original Counterclaim* [Docket No. 15].

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). The pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). This does "not require heightened fact pleading of specifics," and instead only requires facts that "nudge[] the[] claim[] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. After disregarding legal conclusions, the court must "assume all remaining factual allegations to be true, construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them." *Connelly*, 809 F.3d at 790. Further, the court may consider "the allegations contained in the complaint, exhibits attached thereto, and matters of public record." *Beverly Enters., Inc. v. Trump*, 182 F.3d 183, 190 n.3 (3d Cir. 1999). If a pleading falls short, the district court should provide the pleader an opportunity to amend. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).

## II.   OCEAN POINT'S COUNTERCLAIM IS NOT A "SHOTGUN PLEADING."

Port Hamilton mischaracterizes the Counterclaim as a "Shotgun Pleading." *See* Mem. 3.[3] Shotgun pleadings are those that "'in each count, incorporate[] all the preceding paragraphs . . . making it virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.'" *Williams v. Flat Cay Mgmt., LLC*, No. 3:22-CV-0002, 2023 WL 2563193, at *15 (D.V.I. Mar. 17, 2023) (quoting *Henry v. Hovensa, LLC*, No. SX-15-CV-568, 2016 WL 9454121, at *4 (V.I. Super. Ct. May 19, 2016)). For example, in *Williams*, the plaintiffs re-alleged all of their allegations, and then merely stated "the conduct of Defendant [] constituted negligence." *Williams*, 2023 WL 2563193, at *15. Shotgun pleadings also typically fail to identify

---

[3] Citations to "***Mem.***" are to *Port Hamilton's Memorandum in Support of Motion to Dismiss Counterclaim* [Docket No. 17].

2

the applicable law. *See, e.g.*, *Mardenborough v. McCollum*, No. CV 2014-82, 2018 WL 3245047, at *3 (D.V.I. July 3, 2018) (characterizing a complaint as a "shotgun pleading" where it failed to identify whether the claims were based on federal or local law). Finally, they usually fail to identify which counts apply to which defendants. *See, e.g.*, *Henry*, 2016 WL 9454121, at *4.

The problem with shotgun pleadings is ambiguity and absence of fair notice. There is nothing like that here. Although the Counterclaim incorporates Ocean Point's prior responses, such responses were made in response to Port Hamilton's own allegations, which provide copious detail about the APA, the Sale Order,[4] and Port Hamilton's interpretation of same. If the Counterclaim fails as a "shotgun pleading," then so does Port Hamilton's own FAC. In addition, unlike the pleadings at issue in *Williams* and *Henry*, the Counterclaim makes additional allegations within Count I (*i.e.*, those explaining that Port Hamilton breached the APA's mandatory forum-selection clause by filing suit in the wrong jurisdiction). More importantly, because there is just one count and one counter-defendant, there is no concern that parties will not be able to trace particular allegations to particular counts and counter-defendants. Further, unlike *Mardenborough*, the Counterclaim identifies which body of law governs the claim—and Port Hamilton even acknowledges this. *See* Mem. 4 (citing Counterclaim ¶ 12, which identifies applicable Texas law).

---

[4] "**Sale Order**" means the *Order (I) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Debtors to Perform under the Asset Purchase Agreement, (III) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief*, attached as Exhibit D to Port Hamilton's FAC, available at Docket No. 1-1, ECF p. 104.

### III. OCEAN POINT PLAUSIBLY ALLEGES A COUNTERCLAIM FOR BREACH OF CONTRACT.

Ocean Point pleads one straightforward count in its Counterclaim: breach of contract. Ocean Point alleges that Port Hamilton breached the APA's mandatory forum-selection clause by filing the FAC[5] in the Superior Court. Ocean Point alleges that Port Hamilton's breach of the APA caused Ocean Point to suffer damages. This alone is enough to plead a plausible claim for breach of contract.

#### A. Port Hamilton's First Amended Complaint Is Within the Scope of the APA's Forum-Selection Clause.

State law determines the scope of a forum selection clause. *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 183 (3d Cir. 2017). The APA, a document of public record,[6] is governed by and construed under the laws of Texas. APA § 11.8. Texas courts broadly construe forum-selection clauses which encompass proceedings "with respect to" or "arising under or relating to" the agreement at issue. *See, e.g.*, *SH Salon L.L.C. v. Midtown Mkt. Missouri City, TX, L.L.C.,* 632 S.W.3d 655, 658 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (holding that a forum selection clause covering "any action, suit or proceeding arising out of or relating to [the Agreement]" was broad and "embraces every event that hindsight can logically identify in the causative chain") (internal citation omitted); *In re Longoria,* 470 S.W.3d 616, 628 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (collecting cases holding language such as "relating to," "relates to," and "arises under or relates to" all indicate the broad scope of a forum-selection clause).

---

[5] "***FAC***" means Port Hamilton's *First Amended Complaint* [Docket No. 1-1; Ex. A-4].

[6] More specifically, the FAC, APA, and Sale Order are all public records, and this Court therefore may consider them in resolving the Motion. *See In re Limetree Bay Services, LLC*, No. 21-32351 (Bankr. S.D. Tex.) [Docket Nos. 977, 977-1]; *see also* Exs. D & E to Port Hamilton's FAC; *Beverly Enters.*, 182 F.3d at 190 n.3.

Federal law governs the *procedural* enforceability of a forum selection clause in the context of motions for dismissal or motions to transfer. *See, e.g., Wall St. Aubrey Golf, LLC v. Aubrey,* 189 F. App'x 82, 84 (3d Cir. 2006) ("We use federal law when determining the effect of forum selection clauses because questions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive, in nature.") (internal quotation omitted). But, here, in the context of Ocean Point's *substantive* breach of contract claims, Texas state law governs.[7] *See* APA § 11.8 (providing that Texas law governs the APA as to "validity, enforcement, interpretation, construction, effect and in all other respects"). Texas courts have held that parties' consent to the "exclusive jurisdiction" of a forum creates a mandatory forum selection clause. *See In re Automated Collection Techs., Inc.*, 156 S.W.3d 557, 558–59 (Tex. 2004).

As Ocean Point alleges and Section 11.9 of the APA provides:

> Purchaser and Sellers agree that **the Bankruptcy Court shall retain sole jurisdiction over any legal action or proceeding with respect to this Agreement**. Each of Purchaser and Sellers irrevocably waives any objection, including any objection to the laying of venue or based on the grounds of *forum non conveniens,* which it may now or hereafter have to the bringing of any action or proceeding in such jurisdiction in respect of this Agreement or the transactions contemplated hereby. Purchaser and Sellers consent to the jurisdiction and authority of the Bankruptcy Court, including, without limitation, to the entry of final orders, decrees and judgments with respect to any matters arising under or relating to this Agreement or the transaction(s) contemplated hereby.

(emphasis added); *see also* Counterclaim ¶ 9. Port Hamilton indisputably traces its claim of ownership of the disputed assets to the APA, *see* FAC ¶¶ 10–22, which means this suit is "with respect to" the APA even if Port Hamilton also has other theories on which it disputes Ocean

---

[7] Ocean Point's substantive claim for breach of contract is governed by Texas law. *See, e.g., Schmigel v. Uchal*, 800 F.3d 113, 119 (3d Cir. 2015) (analyzing how federal courts hearing state law claims apply state substantive law and federal procedural law to such claims).

Point's undivided interest in the relevant assets. Indeed, if this is not a dispute with respect to the APA, nothing is. *See SH Salon*, 632 S.W.3d at 658.

**B.    Ocean Point Can Recover for Port Hamilton's Breach of the Forum-Selection Clause in the APA.**

The Counterclaim and the public records underpinning it show that Ocean Point is entitled to recover for Port Hamilton's breach of the APA. *See* Counterclaim ¶ 10.

1. Ocean Point pleads sufficient facts to plausibly allege that it may recover for Port Hamilton's breach under equitable theories.

Texas courts have applied equitable estoppel to permit non-signatories to enforce forum-selection clauses against signatories under the doctrine of direct-benefits estoppel.[8] *See Smith v. Kenda Cap., LLC*, 451 S.W.3d 453, 458–59, 459 n.3 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (surveying Texas case law). "A non-signatory may invoke the direct benefits estoppel exception to enforce an arbitration clause contained in a contract that contains other terms on which the signatory plaintiff must rely to prosecute its claims." *Id.* at 458 (quoting *VSR Fin. Servs., Inc. v. McLendon*, 409 S.W.3d 817, 831 (Tex. App.—Dallas 2013, no pet.)). Texas courts have also applied the "transaction-participant theory," under which non-signatory "transaction participants" may enforce forum selection clauses where it was "foreseeable" that the non-signatory could enforce it. *See, e.g.*, *In re Killick Aerospace Ltd.*, No. 02-20-00280-CV, 2020 WL 7639575, at *5 (Tex. App.—Fort Worth Dec. 23, 2020, no pet.).

Under Texas law, a party prevailing on a breach of contract claim may recover attorney's fees. Tex. Civ. Prac. & Rem. Code § 38.001(b)(8). Ocean Point alleges that the APA has a forum

---

[8] The equitable principles concerning Ocean Point's breach of contract claim are governed by state, not federal, law because they constitute state substantive law in this context. *See, e.g.*, *Schmigel*, 800 F.3d at 119.
.

6

selection clause, under which Port Hamilton agreed that the Bankruptcy Court[9] would have "sole jurisdiction over any legal action or proceeding with respect to this Agreement." *See* Counterclaim ¶ 8; APA § 11.9. Port Hamilton cannot seek, through its FAC, the direct benefits of its interpretation of the APA, while at the same time breaching the portions of the APA which apparently do not suit its current venue preferences. Further, Ocean Point is a transaction participant because it negotiated for, and received, a benefit—Port Hamilton's agreement that its undivided ownership interests in certain shared property were not being divested by the APA and Sale Order. *See* Sale Order ¶ 31. There is even an *entire section* of the Sale Order entitled "Provisions Regarding LBT Entities," which refers to Ocean Point. *Id.* Given this benefit, the naming of Ocean Point in the Sale Order, and the unlikely event the Debtors would enforce the forum-selection clause, it was foreseeable that Ocean Point would seek to enforce it.

2. <u>Ocean Point pleads sufficient facts to plausibly allege it is a third-party beneficiary under the APA.</u>

When parties know a purpose of a contract is to benefit a third party, courts may find third-party beneficiary status. *Basic Cap. Mgmt., Inc. v. Dynex Com., Inc.*, 348 S.W.3d 894, 900 (Tex. 2011) (quotation omitted). Among other factors, the court in *Basic* noted that the parties understood that the single-asset bankruptcy remote entities identified as the borrowers were unlikely to enforce the contract. *See id.* Courts are more likely to find third-party beneficiary status if an agreement imposes certain duties on contracting parties as to third parties. *See ConocoPhillips Co. v. Graham*, No. 01-11-00503-CV, 2012 WL 1059084, at *7 (Tex. App.—Houston [1st Dist.] Mar. 29, 2012, no pet.) (analyzing an agreement which imposed duties on one party to protect the safety of its employees when working at the other party's facilities).

---

[9] "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of Texas.

The APA was authorized by the Sale Order. The terms of the Sale Order control the terms of the APA in the event of a direct conflict. *See* Sale Order ¶ 7. Ocean Point was an active participant in the negotiations culminating in the entry of the Sale Order and APA in the Bankruptcy Court. It negotiated to protect its legal interests, namely, its ownership interest in the shared services systems. Indeed, Paragraph 31 of the Sale Order provides "[n]otwithstanding anything to the contrary in this Order or the APA, nothing in this Order authorizes, permits or shall be deemed to authorize or permit, the Debtors to sell . . . **the** LBT Entities' undivided interest of shared services systems, **any** real property owned by the LBT Entities, or **the** rights of the LBT Entities under any Permits." (emphasis added). The APA purports to sell all Purchased Assets "free and clear," *see* APA § 1.1, so the Sale Order must be read in conjunction with the APA in order to fully manifest the parties' intent and safeguards the rights it recognized Ocean Point held in certain property, which otherwise may have been displaced.

Indeed, notwithstanding Section 11.4 of the APA, the parties contracted directly for the benefit of Ocean Point. Port Hamilton could have sought to divest Ocean Point of its ownership interest in shared property using the various tools provided by the Bankruptcy Code. *See, e.g.*, 11 U.S.C. § 363(f), (h). But instead, the contracting parties agreed to language directly benefiting Ocean Point and preserving its property interests. *See* Sale Order ¶ 31. Any conflicts between Section 11.4 of the APA and the parties' otherwise clear intent to confer a direct benefit to Ocean Point is construed in favor of the Sale Order. *See* Sale Order ¶ 7.

The fact that Ocean Point is a third-party beneficiary, entitled to recover on the contract, is further supported by the necessity that Ocean Point be permitted to enforce the forum selection clause. The Debtors and Port Hamilton plainly contracted for all legal proceedings with respect to the APA to be solely brought in the Bankruptcy Court. *See* APA § 11.9. And they also agreed

8

that Ocean Point and Port Hamilton would owe certain duties to one another. *See* Sale Order ¶ 34 (preserving easements and other rights of use). Therefore, it is necessary that Ocean Point enforce the forum selection clause and the terms of APA and Sale Order with respect to it—otherwise, no one else will safeguard the parties' original intent. Accordingly, under Texas Law, Ocean Point pleads a plausible basis for recovery as a third-party beneficiary of the APA.

## IV. ALTERNATIVELY, OCEAN POINT SHOULD BE GRANTED LEAVE TO FILE A CURATIVE AMENDMENT.

Courts in the District of the Virgin Islands have held that a "motion to amend should be denied only for such reasons as 'undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party.'" *UMLIC VP LLC v. Belardo*, No. CIV. 2003/0037, 2003 WL 23218497, at *1 (D.V.I. May 8, 2003) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir .2000)). "Prejudice to the nonmoving party is the touchstone for the denial of the amendment." *Id.* at *2 (citing *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1413 (3d Cir. 1993)).

Ocean Point has not delayed because it filed its Answer in accordance with the schedule agreed to by the parties, *see* Docket No. 7, and amended it to include the Counterclaim within twenty-one days by right in accordance with Federal Rule of Civil Procedure 15(a)(1). There is no indication of bad faith or prejudice because this case is in its early stages. And amendment is not futile because Ocean Point could plead additional factual allegations if required. Tellingly, Port Hamilton's argument for dismissal centers on the supposed lack of factual allegations underpinning these claims, *see* Mem. 4–8, and this alleged deficiency may be cured.

## V. CONCLUSION

The Motion to Dismiss should be denied. Ocean Point pleads a plausible claim for breach of contract that gives Port Hamilton fair notice of Ocean Point's claim and the grounds upon which it is based. Alternatively, Ocean Point should be permitted to amend the Counterclaim.

9

                                                  Respectfully submitted,

                                                  **REED SMITH LLP**

Dated: June 20, 2024          By: */s/ Mark W. Eckard*
                                                    Mark W. Eckard (1051)
                                                    1201 N. Market Street, Suite 1500
                                                    Wilmington, DE 19801
                                                    Telephone: (302) 778-7546
                                                    Facsimile: (302) 778-7575
                                                    Email: MEckard@ReedSmith.com

                                                    Counsel to Limetree Bay Terminals, LLC *d/b/a* Ocean Point Terminals

10